IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LARRY McIVER, et al.                )    CIV-S-01-1967 GEB KJM
                                    )
             Plaintiffs,            )    ORDER
                                    )
v.                                  )
                                    )
THE CALIFORNIA EXPOSITION AND       )
FAIR, et al.,                       )
                                    )
             Defendants.            )
_____)

Defendant Ray Cammack Shows ("RCS") and the California Exposition and Fair ("Cal Expo") move for summary judgment or partial summary judgment on Plaintiffs' claims under the Americans with Disabilities Act ("ADA"), § 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), and California law.  Plaintiffs oppose the motion.[1]

DISCUSSION

I.  RCS

RCS moves for summary judgment on Plaintiffs' remaining claims for violations of Title III of the ADA and various state laws.[2]

_____

[1]  Although Plaintiffs did not timely file their opposition, in this instance, it is considered despite its late submission. Local Rule 78-230(c) requires an opposition to "be filed not less than fourteen (14) days preceding the noticed . . . hearing date."

[2]  RCS also moves for summary judgment on Plaintiffs' claim under § 504 of the Rehabilitation Act. (RCS's Mot. for Summ. J. ("RCS Mot.") at 22.)  However, even though RCS's motion includes Plaintiffs' § 504 claim, Plaintiffs stipulated that a

1

1   Title III of the ADA prescribes: "No individual shall be discriminated

2   against on the basis of disability in the full and equal enjoyment of

3   the goods, services, facilities, privileges, advantages, or

4   accommodations of any place of public accommodation by any person who

5   owns . . . or operates a place of public accommodation."  42 U.S.C.

6   § 12182(a).  Discrimination includes "a failure to remove

7   architectural barriers . . . where such removal is readily

8   achievable."  <u>Id.</u> § 12182(b)(2)(A)(iv).  The ADA Accessibility

9   Guidelines ("ADAAG") "'provide valuable guidance for determining

10 whether an existing facility contains architectural barriers.'"  <u>D'Lil</u>

11 <u>v. Stardust Vacation Club</u>, 2001 WL 1825832, at *4 (E.D. Cal. Dec. 21,

12 2001) (citation omitted).  Readily achievable means "easily

13 accomplishable and able to be carried out without much difficulty or

14 expense."  28 C.F.R. § 36.304(a).  "Whether a specific change is

15 readily achievable 'is a fact intensive inquiry that will rarely be

16 decided on summary judgment.'"  <u>D'Lil</u>, 2001 WL 1825832, at *5

17 (citation omitted) (listing ten "factors to be considered").

18       Many California statutes provide similar protections for

19 individuals with disabilities.  <u>See</u> Cal. Health & Safety Code § 19955;

20 Cal. Gov't Code § 4450; Cal. Civ. Code §§ 51, 54.1(a).  Further, "A

21 violation of the right of an individual under the [ADA] also

22 constitutes a violation of [California Civil Code sections 51 and

23 54.1]."  Cal. Civ. Code §§ 51(f), 54.1(d).

24

25 § 504 claim is not asserted against RCS. (Pls.' Opp'n to RCS's
   Mot. at 1.)

26       "The standards applicable to motions for summary judgment

27 are well known, <u>see, e.g.,</u> <u>Rodgers v. County of Yolo</u>, 889
   F. Supp. 1284 (E.D. Cal. 1995), and need not be repeated here."

28 <u>Reitter v. City of Sacramento</u>, 87 F. Supp. 2d 1040, 1042 (E.D.
   Cal. 2000).

1    RCS argues that Plaintiffs' state law claims are preempted
2  by federal law because "the [ADA] has occupied the field. . . ." (RCS
3  Mot. at 19.)  This argument is unavailing since a provision of the ADA
4  states: "Nothing in [the ADA] shall be construed to invalidate or
5  limit the remedies, rights, and procedures of any . . . law of any
6  State . . . that provides greater or equal protection for the rights
7  of individuals with disabilities than are afforded by [the ADA]."  42
8  U.S.C. § 12201.  Therefore, the ADA does not preempt Plaintiffs' state
9  law claims.  RCS also argues that "[t]he Commerce Clause [Article I,
10 Section 8, clause 3 of the United States Constitution] has long been
11 seen as a limitation on state regulatory powers. . . ." (RCS Mot. at
12 20.)  However, this argument is also unavailing since RCS has not
13 shown that the applicable state law burdens interstate commerce. (<u>See</u>
14 <u>id.</u> at 20-21.)

15      RCS further argues that Plaintiffs' claims predicated on
16 violations of the California Building Code ("CBC") are not viable
17 because the CBC does not apply to RCS's "transient and temporary"
18 facilities; and that "a building standard is defined as applying to 'a
19 building, structure, factory-built housing, or other improvements to
20 real property."  (RCS Mot. at 19 (quoting Cal. Health & Safety Code
21 § 18909(a)).)  However, since "'Building' means any structure used for
22 support or shelter of any use or occupancy," Cal. Health & Safety
23 Code § 18908(a), RCS has not fulfilled its "initial responsibility of
24 informing the district court of the basis" for its contention that the
25 CBC does not apply to its facilities.  <u>Celotex Corp. v. Catrett</u>, 477
26 U.S. 317, 323 (1986).

27      RCS seeks summary judgment on all of Plaintiffs' claims
28 regarding the accessibility of its attractions, and RCS contends those

3

1 | claims fall into three categories: rides, concessions, and cable

2 | chases (RCS Mot. at 5-7).

3 |         A.  Rides

4 |         RCS argues that summary judgment should be granted on

5 | Plaintiffs' claims concerning access to RCS's rides since "Plaintiffs

6 | admit that there is no obligation that the carnival operator has to

7 | make the ride accessible so that the disabled can ride it"[3] and since

8 | "an accessible route is only required on accessible rides."  (RCS Mot.

9 | at 8, 9.)  RCS argues that access requirements are not imposed on

10 | carnival rides: "[The United States] Access Board created a clear and

11 | logical exemption for portable amusements under the ADA" when it

12 | stated that "Mobile or portable amusement rides such as those in

13 | traveling carnivals, State and county fairs, and festivals, do not

14 | need to comply."  (RCS Reply at 2 (citing the United States Access

15 | Board, Accessible Amusement Rides: A Summary of Accessibility

16 | Guidelines for Recreation Facilities ("Access Board Summary")).)

17 |         However, the Access Board Summary specifically notes that

18 | while portable amusement rides are not covered by the ADAAG, "other

19 | ADA requirements still apply."  Access Board Summary at 5.  Plaintiffs

20 | assert that "[i]t is readily achievable to provide ramps at some of

21 | the . . . rides . . . ."  (Pls.' Statement of Genuine Issues of Fact

22 | ("GIF") at ¶ 3.)  RCS avers barrier removal by providing ramps is not

23 | readily achievable since "[i]t is doubtful that any insurance company

24 | would assume the risk of insuring rides in variance with

25 | manufacturer's specifications."  (RCS's Reply to Pls.' GIF at ¶ 3.)

26 |

27 |

28 |      [3]  "[P]laintiffs stipulated that they would not seek to impose 'alteration' or 'new construction' requirements . . . [on RCS's] mechanical rides."  (Opp'n at 2.)

4

1  The parties' dispute on this issue is not distilled enough for a
2  decision on summary judgment.  Therefore, the motion is denied.
3  _____B.  Concessions

4       RCS moves for summary judgment on Plaintiffs' claims
5  regarding its concessions, arguing that since "[t]he concession
6  trailers of [RCS] are mobile units and conveyances . . . [s]tandards
7  developed for permanent structures do not apply."  (RCS Mot. at 10.)
8  However, the ADAAG apply to "temporary buildings or facilities as well
9  as permanent facilities," which includes RCS's concession structures.
10 ADAAG 4.1.1(4); Indep. Living Res. v. Or. Arena Corp., 1 F. Supp. 2d
11 1124, 1138 (D. Or. 1998) (applying the ADAAG to a "concession stand
12 [that] is a portable cart or similar design").

13      RCS further contends that Plaintiff's expert's criticisms of
14 RCS's concession structures concern only the allegation that the
15 service counters at RCS's "ticket booths, four games, and [a] few
16 foodstands . . . are too high."  (RCS Mot. at 7.)  "[C]ounters . . .
17 at which goods or services are sold or distributed" must be a maximum
18 of 36 inches or an "auxiliary counter with a maximum height of 36
19 in[ches]" or "equivalent facilitation" such as a folding shelf must be
20 provided.  ADAAG 7.2(2).

21 _____1. Foodstands

22      RCS argues summary judgment should be granted on Plaintiffs'
23 claims regarding RCS's foodstands since, although the counters are
24 higher than 36 inches, the foodstands satisfy ADAAG 7.2(2) since they
25 "have portable, accessible tables, use clipboards for transactions
26 [and] [e]mployees working at the food concessions are trained to
27 assist anyone who needs it . . . ."  (RCS SUF ¶ 21.)  Plaintiffs
28 counter that the tables to which RCS refers "are positioned for

1   purposes of dispensing condiments [and] do not serve the main counter
2   area." (Pls.' Resp. to RCS SUF ¶ 21). Plaintiffs further contend
3   that having RCS employees leave the concession trailers or use
4   clipboards for transactions is "problematic and not a viable
5   alternative." (Opp'n at 6; Atwood Decl. ¶ 16.) RCS's motion is
6   denied on these claims since a genuine issue of material fact exists
7   as to whether RCS's foodstands have an "auxiliary counter" or an
8   "equivalent facilitation" as required by ADAAG 7.2(2).

9          2.   Games

10          RCS argues that it operates only four games and that "three
11   games unquestionably comply [with ADA and state requirements]" and the
12   other "game has a counter that is too high, but it would require
13   radical modifications to get the counter lowered 14 inches [to satisfy
14   the 36 inch maximum]." (RCS Mot. at 10.) RCS avers that modifying
15   that game would "require re-fabricating the trailer itself." (RCS SUF
16   ¶ 16.) Plaintiffs aver that modifications to improve accessibility
17   would "not necessarily entail cutting into the fabric of the trailer"
18   and might include "lowering the trailer axle closer to grade and/or
19   . . . providing a raised . . . platform." (Pls.' Resp. to RCS SUF ¶
20   16; Danz Decl. ¶ 6.) Since there is a genuine issue of material fact
21   as to whether barrier removal on RCS's games is readily achievable,
22   this portion of RCS's motion is denied.

23          3. Ticket Booths

24          RCS seeks summary judgment on Plaintiffs' claims regarding
25   RCS's ticket booths since, although most of its ticket booth counters
26   are higher than 36 inches, "[t]o accommodate persons with
27   disabilities, the portable ticket booths and information booths
28   operated by [RCS] have clipboards for transactions" and "[e]mployees

working at the booths are trained to assist anyone who needs it, even if it means leaving the trailer in order to accommodate the customer."[4]  (RCS SUF ¶ 23.)  Plaintiffs counter that "clipboards do not mitigate the obstacles that the high counters present" and "[e]mployee 'accommodation' is also not a viable means of access [since] an employee would [not] actually leave the booth during peak use period." (Atwood Decl. ¶¶ 24, 27.)  RCS's motion is denied on these claims since a genuine issue of material fact exists as to whether RCS's ticket booths have an "auxiliary counter" or an "equivalent facilitation" as required by ADAAG 7.2(2).

### 4. Seating at Foodstands

RCS seeks summary judgment on Plaintiffs' claims regarding the lack of sufficient accessible seating near RCS's foodstands since "the requirement [under ADAAG 4.1.3(18) that five percent of seating be accessible] only applies to fixed or built-in seating or tables." (RCS Mot. at 12 (citation omitted).)  Even if ADAAG 4.1.3(18) does not apply, RCS must nonetheless "remove architectural barriers . . . where such removal is readily achievable."  42 U.S.C. § 12182(b)(2)(A)(iv). Plaintiffs argue that the lack of sufficient accessible tables near RCS's foodstands creates a barrier, the removal of which is "readily achievable."  (Opp'n at 7; Danz Decl. ¶ 5).

RCS argues it "does have many portable, accessible tables located throughout the carnival."  (RCS Mot. at 12.)  But, Plaintiffs aver the tables are "insufficient in number and location."  (Pls.'

---

[4]     RCS also argues that "at least one ticket booth has its service counter at the level found acceptable to the Plaintiffs' expert."  (RCS Mot. at 13.)  However, RCS concedes that some of its  ticket booth counters are higher than 36 inches.

Resp. to RCS SUF ¶ 22.)  Since there is a genuine issue of material fact as to whether barrier removal is readily achievable, RCS's motion for summary judgment on Plaintiffs' claims regarding its seating near concessions is denied.

C.  Cable Chases

RCS also seeks summary judgment on Plaintiffs' state and ADA claims regarding its cable chases.  Plaintiffs seek damages on their state claims for the years 2000-2002.  (Second Am. Compl. ¶¶ 16, 21.) RCS has placed several cable chases across routes of travel in the midway.  Cable chases "are commercial products purchased by [RCS] to cover cords and hoses which lie on the ground to provide power and water to the portable attractions and concessions."  (RCS SUF ¶ 24.) RCS argues, "Neither ADA[AG] nor the [CBC] have requirements for cable chases."  (RCS's Mot. at 13.)  Nonetheless, the ADAAG require "[a]t least one accessible route [to] connect . . . facilities . . . that are on the same site."  ADAAG 4.1.2(2).  Similarly, the CBC prescribes: "When more than one . . . facility is located on a site, accessible routes of travel shall be provided between . . . site facilities."  Cal. Code. Regs. tit. 24, § 1127B.1.

RCS avers, "Specially purchased ramps for wheelchair use are emplaced with the cable chases. . . . During each year of the California State Fair, every attraction could be accessed either without crossing over a cable chase at all, or by crossing cables by use of the special ramps."  (RCS SUF ¶ 25.)  Plaintiffs declare the cable chases are non-compliant because "their sides typically exceed a slope of 12 percent" and that it was not until "the year 2003 [that] Defendants started placing modular ramps over the cable chases. . . ."

(Atwood Decl. ¶¶ 5,6.)  Further, Plaintiffs declare that the special ramps were "excessively steep" because "[t]he typical slopes ranged from 9.5% to 11.6%." (Id. at ¶¶ 8, 6.)  Both the ADAAG and the CBC set a maximum ramp slope of 8.33 percent.  See ADAAG 4.8.2; Cal. Code. Regs. tit. 24 § 1133B.5.3.1.  RCS argues, "It is not sensible that lengthy ramps with platforms and handrails be required when the obstacle created by the necessity of a cable chase is negligible in both height and distance."  (RCS Mot. at 14.)

RCS argues that Plaintiffs' ADA claim is moot since "one could access every attraction and concession without crossing over-the-ground cables" at the 2004 California State Fair.  (RCS SUF ¶ 27.)  Plaintiffs counter that "many cable chases remained." (Pls.' Resp. to RCS SUF ¶ 27.)  "Damages are not recoverable under Title III of the ADA--only injunctive relief is available for violations of Title III." Wander v. Kaus, 304 F.3d 856, 858 (9th Cir. 2002).  Since neither the ADAAG nor the CBC require that all routes be accessible and there is no evidence that the remaining cable chases block access to any facility, RCS's motion for summary judgment on Plaintiffs' ADA claim as to the cable chases is granted.  See ADAAG 4.1.2(2); Cal. Code. Regs. tit. 24, § 1127B.1.

But disputed questions of fact exist on Plaintiff's state claims as to whether, during the years 2000-2002, RCS's cable chases and ramps were compliant with the slope requirements of the ADAAG and the CBC or whether all facilities were otherwise accessible. Therefore, RCS's motion for summary judgment on those state law claims is denied.

1    Finally, RCS argues, "If, as demonstrated, alleged
2    violations of access standards are not well founded, meaning that
3    there is no violation of disability rights statutes, . . . then
4    [Plaintiffs' ninth claim under the California Business and Professions
5    Code section 17200] is untenable as a matter of law."  (RCS Mot. at
6    23.)  This portion of the motion is unavailing because of the above
7    stated genuine issues of material fact.
8    <u>II.  Cal Expo</u>

9    Cal Expo seeks summary judgment on Plaintiffs' claims under
10   Title II of the ADA, § 504 of the Rehabilitation Act of 1973,
11   California Government Code section 11135, the Disabled Rights Act,
12   California Government Code section 4450, California Health & Safety
13   Code section 19955, and the Unruh Civil Rights Act.

14   Under Title II of the ADA, "no qualified individual with a
15   disability shall, by reason of such disability, be excluded from
16   participation in or be denied the benefits of the services, programs,
17   or activities of a public entity, or be subjected to discrimination by
18   any such entity."  42 U.S.C. § 12132.  "Each facility or part of a
19   facility constructed by, on behalf of, or for the use of a public
20   entity shall be designed and constructed in such manner that the
21   facility or part of the facility is readily accessible to and usable
22   by individuals with disabilities . . . ."  28 C.F.R. § 35.151(a).

23   Cal Expo argues that the ADAAG do not apply to RCS's rides
24   and concessions, and that RCS's rides, concessions, and cable chases
25   do not violate the ADA.  (Cal Expo's Mot. for Partial Summ. J. ("Cal
26   Expo Mot.") at 3-4.)  Since no genuine issue of material fact
27   prevented granting RCS's motion for summary judgment on Plaintiffs'

28

ADA claims regarding the cable chases, Cal Expo's motion for summary judgment on Plaintiffs' ADA claims regarding the cable chases is also granted.  However, since there is a genuine issue of material fact as to whether RCS is required to remove access barriers to its rides and whether the service counters at RCS's concessions are in compliance with the ADA and the ADAAG, Cal Expo's motion for summary judgment on Plaintiffs' ADA claims regarding access to RCS's rides and concessions is denied.

        Cal Expo argues that Plaintiffs' claim for violation of California Government Code section 11135 must fail because "the ADA does not require any more access than is already provided to RCS's games, rides and concessions."  (Cal Expo Mot. at 6.)  Cal Expo also argues that Plaintiffs' claim under the Disabled Rights Act must fail because "RCS's motion demonstrates that reasonable accommodations have been made and that its concessions and games are presently accessible" and that Plaintiff's California Government Code section 4450 claim must fail because "no state regulations require that RCS's games, concessions and rides be made accessible."  (Id. at 6, 7.)  Further, Cal Expo argues that "Nothing in [the Unruh Civil Rights Act] shall be construed to require any construction, alteration, repair, structural or otherwise, or modifications of any sort whatsoever, beyond that . . . required by other provisions of law . . . ."  (Id. at 7 (quoting Cal. Civ. Code § 51(d)).)  Because RCS's compliance with federal and state requirements regarding access to its rides and concessions is still in dispute, and its compliance with state requirements regarding its cable chases is also still in dispute, Cal Expo's motion for summary judgment on Plaintiffs' claims under California Government

Code sections 11135 and 4450, the Disabled Rights Act, and the Unruh Civil Rights Act is denied.[5]

Cal Expo notes that "[California Health and Safety Code section 19955] requires that public accommodations in California conform with [California Government Code section 4450]."  Since Cal Expo's motion for summary judgment has been denied on Plaintiffs' section 4450 claim, summary judgment is also denied on Plaintiffs' California Health and Safety Code section 19955 claim.

Cal Expo also seeks summary judgment on Plaintiffs' third claim for violation of § 504 of the Rehabilitation Act, which states: "No . . . individual with a disability . . . shall . . . be subjected to discrimination under any program or activity receiving [f]ederal financial assistance . . . ."  29 U.S.C. § 794(a).  Cal Expo avers that it is not a recipient of federal funds "in relation to the midway area."  (Cal Expo's Statement of Undisputed Facts at 4.)  To show that an entity "received federal financial assistance" for purposes of an anti-discrimination statute, Plaintiffs need not show that federal funds were spent directly on activities that discriminated against Plaintiffs.  See Nat'l Collegiate Athletic Ass'n v. Smith, 525 U.S. 459, 460 (1999).  Since Cal Expo's response does not unambiguously declare that it receives no federal funds, its motion for summary judgment on Plaintiffs' third claim is denied.

---

[5]    Cal Expo also argues that the CBC does not regulate RCS's rides, concessions, and games (Cal Expo Mot. at 6), that state law is preempted by federal law (id. at 8), and that state law requiring greater access to RCS's rides, concessions, and games is an undue burden on interstate commerce (id. at 9). However, these arguments have already been addressed above.

1                               CONCLUSION

2          Defendants' motion for summary judgment on Plaintiffs' ADA

3   claims regarding RCS's cable chases is granted, and Defendants' motion

4   for summary judgment on all of Plaintiffs' other claims is denied.

5          IT IS SO ORDERED.

6   Dated:  June 28, 2005

7

8                                    /s/ Garland E. Burrell, Jr.
                                     GARLAND E. BURRELL, JR.
                                     United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28