

**FILED**

DEC - 1 2005

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LARRY McIVER, et al.,

        Plaintiffs,             No. CIV S-01-1967 KJM

        vs.

CALIFORNIA EXPOSITION & FAIR, et al.,

        Defendants.

_____/

ISC, INC., et al.,

        Plaintiffs,             No. CIV S-04-1790 KJM

        vs.

CALIFORNIA EXPOSITION & FAIR, et al.,

        Defendants.             ORDER

_____/

        Upon review of the proposed consent decrees, and good cause appearing therefor,

THE COURT HEREBY ORDERS AS FOLLOWS:

        1. The joint motion to file a third amended complaint is granted. The Clerk of

Court is directed to file and docket as the third amended complaint the proposed complaint

submitted as exhibit 3 to the joint motion filed September 16, 2005. The third amended

1

1  complaint does not name Earl Welsh as a plaintiff in case no. CIV S-04-1790 KJM. Plaintiff
2  Welsh is accordingly dismissed from this action.

3          2. The consent decrees are hereby approved with the clarifications and
4  modifications as set forth in the footnotes to the proposed decrees, attached hereto as Exhibits A
5  and B, and incorporated herein.

6          3. A settlement conference on the issue of attorneys' fees is set for December 16,
7  2005 at 9:00 a.m before the Honorable Gregory G. Hollows. Absent resolution by settlement of
8  attorneys' fees, any motion for attorneys' fees shall be filed within sixty days of the completion
9  of the settlement proceedings.

10          4. Any objections to the proposed consent decrees, as clarified and modified
11 herein, shall be filed within ten days from the date of this order. Failure to object shall result in
12 final entry of the consent decrees, as set forth in Exhibits A and B.

13 DATED: November 30, 2005.

14

15

16                                                    UNITED STATES MAGISTRATE JUDGE

17

18 006 mciver-isc.consent

19

20

21

22

23

24

25

26

                                                    2

# EXHIBIT A

1  **Thimesch Law Offices**
   TIMOTHY S. THIMESCH, ESQ., No. 148213
2  MICHELLE L. THIMESCH, ESQ., No. 140591
   171 Front Street, Suite 102
3  Danville, CA 94526-3321
   Direct: (925) 855-8235
   Fax: (925) 855-8435
4
   Attorneys for Plaintiffs
5  LARRY MCIVER and HOLLYNN D'LIL

6  STEPHEN E. HORAN, ESQ. (No. 125241)          CARYN L. CRAIG, ESQ. (No. 185621)
   PORTER, SCOTT, WEIBERG & DELEHANT            OFFICE OF THE ATTORNEY GENERAL
   350 University Avenue, Suite 200             1300 I Street, P.O. Box 944255
7  Post Office Box 255428                       Sacramento, CA 94244-2550
   Sacramento, CA 95865                         Fax No. 916/327-2319
   Tel: 916/929-1481
8                                               Attorneys for Defendant
   Attorneys for Defendant                      STATE OF CALIFORNIA
9  CALIFORNIA EXPOSITION & STATE FAIR

10

11                          U.S. DISTRICT COURT
                     EASTERN DISTRICT OF CALIFORNIA
12

13   LARRY MCIVER and HOLLYNN D'LIL,        CASE NO. S-2:01-1967 KJM
                                            Civil Rights
14        Plaintiffs,

15   v.                                     CONSENT DECREE WITH COURT
                                            ANNOTATIONS
16   THE CALIFORNIA EXPOSITION &
     STATE FAIR, aka "Cal Expo"; STATE
17   OF CALIFORNIA; RAY CAMMACK
     SHOWS, INC.; and DOES 1-5000,
18   Inclusive,

19        Defendants.                 /
     ISC, INC., CHRISTINE FITZGERALD,       CASE NO. CIV-S-04-1790 KJM
20   CONNIE ARNOLD, RUSS BOHLKE, and        Civil Rights
     JEFFREY EVANS,
21                                          Related Action
          Plaintiffs,
22
23   v.

24   THE CALIFORNIA EXPOSITION &
     STATE FAIR, aka "Cal Expo"; STATE OF
25   CALIFORNIA; RAY CAMMACK
     SHOWS, INC.; and DOES 1-5000,
26   Inclusive,

27        Defendants.                 /

28   ////

     00396042.WPD                           1

1

# TABLE OF CONTENTS

2

3    I.      RECITALS ........................................................... 5

4    II.     JURISDICTION ...................................................... 8

5    III.    DEFINITIONS ....................................................... 9

6            A.     10-Year Plan ................................................. 9

7            B.     ADA ......................................................... 10

8            C.     ADAAG ...................................................... 10

9            D.     Annual Obligation ........................................... 10

10           E.     Approval .................................................... 10

11           F.     Atwood/Danz Report ......................................... 10

12           G.     California Disability Access Laws ............................. 10

13           H.     Consent Decree .............................................. 11

14           I.     Compliance Period ........................................... 11

15           J.     Compliance .................................................. 11

16           K.     Defendants .................................................. 11

17           L.     Defense Counsel ............................................. 11

18           M.     Mobility Disability ........................................... 11

19           N.     Named Plaintiffs ............................................ 11

20           O.     Parties ...................................................... 11

21           P.     Performance Standards ....................................... 12

22           Q.     Plaintiffs' Counsel .......................................... 12

23           R.     Released Claims/Released Parties ............................. 12

24           S.     The Court ................................................... 12

25           T.     Title 24 ..................................................... 12

26           U.     Vision Disability ............................................. 12

27   IV.     COMPLIANCE PERIOD ............................................... 12

28           A.     Term of Compliance Period ................................... 12

LAW OFFICES OF
PORTER, SCOTT,
WEIBERG & DELEHANT
A PROFESSIONAL CORPORATION
350 UNIVERSITY AVE., SUITE 200
P.O. BOX 255428
SACRAMENTO, CA 95865
(916) 929-1481
www.pswdlaw.com

|    |   | B. | Monitoring in the Final Year ........................................... 13 |
| 1  |   |    |  |
| 2  |   | C. | Disputes in the Final Year ............................................ 13 |
| 3  |   | D. | Effect of (IV) (B) & (C) on Annual Obligation ........................... 13 |
| 4  |   | E. | Early Termination.................................................. 13 |
| 5  |   | F. | Further Extension .................................................. 13 |
| 6  | V. |    | RELEASE OF INJUNCTIVE AND DECLARATORY RELIEF CLAIMS .......... 14 |
| 7  | VI. |   | INJUNCTIVE RELIEF................................................... 15 |
| 8  |   | A. | Annual Obligation .................................................. 15 |
| 9  |   | B. | 10-Year Plan...................................................... 16 |
| 10 |   | C. | New Construction and Alterations...................................... 16 |
| 11 |   | D. | Performance Standards............................................... 16 |
| 12 |   | E. | Construction Tolerances.............................................. 16 |
| 13 |   | F. | Timeliness........................................................17 |
| 14 |   |    | 1.    Permits and Planning ........................................ 17 |
| 15 |   |    | 2.    Force Majeure............................................. 17 |
| 16 |   | G. | Change in Circumstance.............................................. 17 |
| 17 |   | H. | Exclusions........................................................17 |
| 18 | VII. |  | REPORTS AND MONITORING............................................18 |
| 19 |   | A. | Independent Monitor................................................18 |
| 20 |   | B. | Annual Reports.................................................... 18 |
| 21 |   | C. | Monitoring ....................................................... 19 |
| 22 |   | D. | Compensation for Monitoring.......................................... 19 |
| 23 |   | E. | Administrative liaison................................................20 |
| 24 | VIII. | | APPROVAL OF CONSENT DECREE....................................... 21 |
| 25 | IX. |   | DISPUTE RESOLUTION ............................................... 21 |
| 26 |   | A. | Continuing Jurisdiction............................................... 21 |
| 27 |   | B. | Joint Agreement and No Contempt Citation or Decree.................... 21 |
| 28 |   | C. | Dispute Resolution Process ........................................... 21 |

00396042.WPD       3

|  |  |  |
|---|---|---|
| 1 | D. | Fees and Costs for Dispute Resolution ............................... 22 |
| 2 | E. | Delay Due To Dispute Resolution ................................... 22 |
| 3 | X. | ATTORNEYS' FEES AND COSTS........................................ 23 |
| 4 | XI. | CONTINUING JURISDICTION........................................... 23 |
| 5 | XII. | MISCELLANEOUS ..................................................... 24 |
| 6 | A. | Counterparts ...................................................... 24 |
| 7 | B. | Interpretation...................................................... 24 |
| 8 | C. | Severability ....................................................... 24 |
| 9 | D. | Non-Determination ................................................. 24 |
| 10 | E. | Entire Agreement................................................... 24 |
| 11 | F. | Additional Documents............................................... 25 |
| 12 | G. | Cal Expo's Approval................................................ 25 |
| 13 | H. | Authority ......................................................... 25 |
| 14 | I. | Knowing Agreement ................................................ 25 |
| 15 | J. | Successors ........................................................ 25 |
| 16 | K. | Non-Application to Defendant Ray Cammack Shows, Inc................. 26 |
| 17 | L. | Appealability...................................................... 26 |
| 18 | M. | Deadlines......................................................... 26 |

19
20
21
22
23
24
25
26
27
28

# I. RECITALS

**A.**    Plaintiffs HolLynn D'Lil and Larry McIver are each persons with a Mobility Disability who regularly use the public facilities at California Exposition and State Fair (Cal Expo), located at 1600 Exposition Boulevard in Sacramento, California.

**B.**    Cal Expo's facilities are located on approximately 364 developed acres. Public and private events held at Cal Expo during the year draw approximately 3 million visitors, though many events are produced, operated, planned and maintained by third-party promoters who contract with Cal Expo for the use of the grounds.

**C.**    Plaintiffs D'Lil and McIver filed this action, known as <u>McIver et. al. v. California Exposition & Fair, et. al.</u>, in Superior Court in 2001.[1]  On October 23, 2001, the action was removed to U.S. District Court, and assigned Case No. S-01-1967 GEB KJM ("<u>McIver</u> Action"). Plaintiffs filed the <u>McIver</u> Action on behalf of themselves and all other similarly situated members of the public[2] to enforce provisions of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. 12101 et seq., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794, and California's Civil Rights laws, including among others, the Unruh Civil Rights Act (California Civil Code §§ 51 et. seq.), California Civil Code §§ 54 et. seq., California Government Code §§ 4450 et. seq. and 11135, and Health and Safety Code §§ 19952 and 19955 against inter-alia, Defendants THE CALIFORNIA EXPOSITION & STATE FAIR and the STATE OF CALIFORNIA ("Defendants").[3]

---

[1] Michael Dunne was also a Named Plaintiff. He was dismissed without prejudice by Order dated October 14, 2004.

[2] **COURT**: As the court previously has advised the parties, it does not believe this decree can be enforced to prevent parties not in privity with plaintiffs from bringing actions if such parties otherwise have the right to do so. See Headwaters, Inc. v. U.S. Forest Service, 399 F.3d 1047, 1052-54 (9th Cir. 2005). The court notes plaintiffs have never sought class certification or demonstrated to the court in a manner to support the court's independent determination that this consent decree is structured to protect "strangers" to this case. Id. at 1056. Thus, the court approves the decree's incorporation of language referencing "similarly situated members of the public" only to the extent allowable by law, with resolution of res judicata to be resolved by litigation in the future to the extent the question is raised by future filings.

[3] This Consent Decree does not apply to Ray Cammack Shows, Inc.

LAW OFFICES OF
PORTER, SCOTT,
WEISBERG & DELEHANT
A PROFESSIONAL CORPORATION
350 UNIVERSITY AVE., SUITE 200
P.O. BOX 255428
SACRAMENTO, CA 95865
(916) 929-1481
www.pswdlaw.com

00396042.WPD                                         5

**D.**     The current operative complaint is Plaintiffs' Second Amended Complaint, filed June 2, 2002. Plaintiffs will request permission to file a Third Amended Complaint in conjunction with the submission of this Consent Decree to include the claims of certain named plaintiffs in ISC v. Cal Expo, et al., Superior Court No. 03AS05963 (hereafter "ISC State Action") and ISC v. Cal Expo, et al., U.S.D.C., E. Dist. of Calif., No. CIV-S-04-1790 KJM (Hereafter "Federal ISC Action"). (Hereafter, the two ISC cases may be referred to as "The ISC Actions.") McIver Plaintiffs D'Lil and McIver, and named ISC Plaintiffs Christine Fitzgerald, Connie Arnold, Russ Bohlke, Jeffrey Evans and ISC, Inc. and Defendants Cal Expo and the State of California have agreed, along with Defendant Ray Cammack Shows, Inc., who is not a party to this Consent Decree, to jointly stipulate to Plaintiffs' filing of a Third Amended Complaint. The individual named plaintiffs (excluding ISC, Inc.) are each persons with a Mobility Disability and/or Vision Disability who regularly use the public facilities at Cal Expo.

**E.**     The Parties joint stipulation provides that if the Court grants Plaintiffs leave to file a Third Amended Complaint that will incorporate the above-named ISC Plaintiffs and their claims, that the Federal and State ISC Actions will be dismissed, if and when the Court approves the Consent Decree as provided elsewhere herein. The Parties stipulation further provides, *inter alia,* that the ISC Plaintiffs factual allegations incorporated into the Third Amended Complaint shall relate back to the date of the original filings of the respective Federal and State ISC Actions, all Named Plaintiffs' claims for attorneys fees, litigation expenses and costs incurred in the State and Federal ISC actions shall be deemed incurred in the present McIver action, and for this purpose the three actions shall be deemed inextricably intertwined.[4]

---

[4]   **COURT:**  The court adopts the parties' stipulation regarding the relation back of claims with the clarification that the stipulation will be enforced to the extent allowable by law with the status of the law to be litigated at the time of any dispute based on the relation back doctrine.

LAW OFFICES OF
PORTER, SCOTT, 28
WEIBERG & DELEHANT
A PROFESSIONAL CORPORATION
350 UNIVERSITY AVE., SUITE 200
P.O. BOX 255428
SACRAMENTO, CA 95865
(916) 929-1481
www.pswdlaw.com

00396042.WPD                                        6

1    **F.**    The parties contemplate and understand that this Consent Decree and the 10-Year

2    Plan set forth in detail the physical alterations to be made by Defendant, and fully resolve any and

3    all injunctive relief issues relating to Mobility and Vision Disabilities.[5]

4    **G.**    The Second Amended Complaint alleges that Defendants violated Title II of the

5    ADA, Section 504 of the Rehabilitation Act, California Civil Code §§ 51 and 54.1, and California

6    Government Code §§ 4450 *et seq.* and 11135, by failing to provide full and equal access to the

7    disabled at Cal Expo's facilities, including its theaters, shows, arenas, grandstands, stadiums,

8    museums, exhibits, pavilions, amusements, arcades, restaurants, concessions, picnic areas, service

9    and merchandise facilities, places of public gathering and/or admission, as well as its parking

10   facilities, paths of travel, entrances, public restrooms, and all other facilities at Cal Expo.

11   **H.**    Defendants deny any and all liabilities to Named Plaintiffs, defined further herein,

12   and deny that Defendants have violated any laws – federal, state, or local – pertaining to access for

13   persons with disabilities at Cal Expo's facilities as described above.  It is understood that this

14   agreement is a compromise of disputed claims and any payment or agreement to perform any action

15   is not to be construed as an admission of liability by Defendants.

16   **I.**    The Parties desire to resolve their differences and disputes by settling the declaratory

17   and injunctive relief claims in the McIver lawsuit, as well as the declaratory and injunctive relief

18   claims of all ISC Plaintiffs (to be incorporated into the McIver lawsuit through the Third Amended

19   Complaint), subject to amendment, so as to:

20       **1.**    Provide programmatic access to existing facilities at Cal Expo for qualified

21   individuals with disabilities, including Mobility and Vision Disabilities, as required under federal

22   and state law;

23

24

25

26   ―――――――――――――――――

27   [5] Plaintiffs' Experts, Barry Atwood and Karl Danz, prepared a 19 volume report and 200
page Summary Report identifying alleged barriers to access. The signatory defendants are not
required by this Decree to perform the work described in the Atwood/Danz Report. It is referred to
here and defined below for the purpose of describing the scope contemplated by the negotiations and
compromise reached in this matter.

LAW OFFICES OF
PORTER, SCOTT, 28
WEIBERG & DELEHANT
A PROFESSIONAL CORPORATION
350 UNIVERSITY AVE., SUITE 200
P.O. BOX 255428
SACRAMENTO, CA 95865
(916) 929-1481
www.pswdlaw.com

00396042.WPD                                    7

1    **2.**    Provide structural access to all facilities at Cal Expo that have been newly

2 constructed or altered (prior to Court Approval of this Consent Decree) as required under federal

3 and state law for qualifying individuals with disabilities;

4    **3.**    Assure that no one, including the Named Plaintiffs, nor other persons

5 similarly situated, will attempt to enforce conflicting standards at Cal Expo regarding compliance

6 with Title II of the ADA, Section 504, and California disability access laws;[6]

7    **4.**    Assure that pursuant to the holding of Headwaters, Inc. v. U.S. Forest

8 Service (2005) 399 F.3d 1047, 1052, no one found to be in privity and adequately represented by

9 the Named Plaintiffs in this action, including the Named Plaintiffs, nor other persons similarly

10 situated, shall hereafter assert the same claims for injunctive relief (arising out of the same nucleus

11 of fact necessary to establish liability) that Defendants are required to make additional and/or

12 different modifications to Cal Expo's facilities or that Defendants are required to follow different

13 standards beyond what is agreed to herein in order to comply with the existing obligations under

14 provisions of Title II of the ADA, Section 504, or California disability access laws;[7] and

15    **5.**    Avoid the uncertainties and costs of further and future litigation for all

16 parties.

17    **J.**    Furthermore, Cal Expo's self-evaluations and Transition Plans, previously created

18 pursuant to the Americans with Disabilities Act to ensure access to its programs, services, activities

19 and facilities, are hereby supplemented and amended by this Consent Decree and the 10-Year Plan.

20    **WHEREFORE, the Parties hereby agree and stipulate to the Court's entry of this**

21 **Consent Decree and Order, which provides as follows:**

22                                    **II. JURISDICTION**

23    The Parties agree that the Court has original federal question jurisdiction over this matter

24 pursuant to Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. Sections 12101 *et*

25 *seq.*; and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794. The Court has

26

27

28

LAW OFFICES OF
PORTER, SCOTT,
WEIBERG & DELEHANT
A PROFESSIONAL CORPORATION
350 UNIVERSITY AVE., SUITE 200
P.O. BOX 255520
SACRAMENTO, CA 95865
(916) 929-1491
www.pswdlaw.com

[6] **COURT:** See footnote 2 above.

[7] **COURT:** See footnote 2 above.

8

1   supplemental jurisdiction over attendant and related causes of action arising from the same facts

2   that are brought under California law, including but not limited to violations of Government Code

3   Sections 4450 et seq. and 11135, including Section 4456; Title 24 California Code of Regulations;

4   and California Civil Code Sections 51, 54 and 54.1.

5       The parties additionally acknowledge that for each disability classification covered by this

6   decree, the Named Plaintiffs as a group have standing for Article III purposes to pursue the

7   injunctive relief claims resolved by this decree, and have so sufficiently demonstrated with

8   verifiable evidence of their disability, and their injury and future injury through sufficient exposure

9   and use of the park and its facilities covered hereunder. The parties stipulate, however, that the

10  foregoing acknowledgement shall constitute privileged and confidential settlement matter that shall

11  not be admissible as evidence in any proceeding or trial concerning the damage claims of Named

12  Plaintiffs.[8]

13  ## III. DEFINITIONS

14      As used in this Consent Decree, the following terms shall have the meaning ascribed to

15  them in this Section. Except to the extent expressly stated to the contrary, any term not defined in

16  this Section, or elsewhere in this Consent Decree, that has an expressly defined meaning in either

17  the ADA or the regulations promulgated pursuant thereto ("Regulations") shall have the meaning

18  ascribed to it by the ADA or the Regulations, in that order of preference.[9] All other terms shall be

19  interpreted according to their plain and ordinary meaning.

20  ### A.  10-Year Plan

21      "10-Year Plan" means and refers to the document attached hereto as **Exhibit 1**, which

22  supplements the previously created transition plans and self-evaluations, and which more

23  specifically details the physical alterations to be made by Defendant Cal Expo.

24

25

26  [8] **COURT**:  The court clarifies that while the parties apparently have agreed they will not
    seek to admit the information referenced here, determinations of admissibility shall be made by the
27  court.

LAW OFFICES OF
PORTER, SCOTT, 28
WEIBERG & DELEHANT
A PROFESSIONAL CORPORATION
350 UNIVERSITY AVE., SUITE 200
P.O. BOX 255428
SACRAMENTO, CA 95865
(916) 929-1481
www.pswdlaw.com

[9] **COURT**:  The parties have represented to the court that in the case of a conflict as to
meaning, the ADA will control.

**B. ADA**

"ADA" means and refers to the Americans with Disabilities Act as contained at 42 U.S.C. § 12101 *et seq*.

**C. ADAAG**

"ADAAG" means and refers to the Americans with Disabilities Act Accessibility Guidelines, codified at Appendix A to 28 Code of Federal Regulations, Part 36 and at Appendix A to 49 Code of Federal Regulations, Part 37.

**D. Annual Obligation**

"Annual Obligation", which is described below in Section (VI) (A), means and refers to Defendant Cal Expo's obligation to commit a specified level of funding annually to implement this Consent Decree and the Approved 10-Year Plan.

**E. Approval**

"Approved" or "Approval" means and refers to the approval by the Court in Case No. S-01-1967 KJM of the terms of this Consent Decree, the concurrent Stipulation for Leave to File the Third Amended Complaint, and the Court's consent to maintain jurisdiction to interpret and enforce the terms of this Consent Decree.

**F. Atwood/Danz Report**

"Atwood/Danz Report" means the 19 Volume Report prepared by Plaintiffs' Consultants, Barry Atwood and Karl Danz, and served on Defendants as part of expert designations in this case. The parties to this agreement shall each maintain a copy of Atwood/Danz Report, which will be made available upon request. It is not an exhibit to this document.

**G. California Disability Access Laws**

"California Disability Access Laws" refers to the Unruh Civil Rights Act, California Civil Code §§ 51 et. seq., California Civil Code §§ 54 et. seq., Government Code §§ 4450 *et seq.* and 11135, Health and Safety Code §§ 19952 and 19955, as well as those portions of the California Building Code (Title 24 of the Code of Regulations) that set forth scoping requirements for structural access in new and altered facilities.

LAW OFFICES OF
PORTER, SCOTT, 28
WEISBERG & DELEHANT
A PROFESSIONAL CORPORATION
350 UNIVERSITY AVE., SUITE 200
P.O. BOX 255428
SACRAMENTO, CA 95865
(916) 929-1481
www.pswdlaw.com

00396042.WPD                    10

**H. Consent Decree**

"Consent Decree" means and refers to this document, "Consent Decree and Order".

**I. Compliance Period**

"Compliance Period" means and refers to the period of time described in Section "IV".

**J. Compliance**

"Compliance," "Compliant" and "Comply" mean and refer to substantial satisfaction of the dictates of this Consent Decree and its supporting documents, including the Work Plan and the performance standards specified herein.

**K. Defendants**

"Defendants" means and refers to the CALIFORNIA EXPOSITION & STATE FAIR, and its successors in interest, and the STATE OF CALIFORNIA.

**L. Defense Counsel**

"Defense Counsel" refers to the law firm of Porter, Scott, Weiberg & Delehant on behalf of Cal Expo, and the Office of the Attorney General on behalf of the State of California.

**M. Mobility Disability**

"Mobility Disability" means and refers to any physical impairment or condition that substantially limits an individual's ability to move his or her body or a portion of his or her body and includes, but is not limited to, orthopedic and neuro-motor disabilities and any other impairment or condition that limits an individual's ability to walk, maneuver around objects, ascend or descend steps or slopes, and operate controls. An individual with a Mobility Disability may use a wheelchair or motorized scooter for mobility, or may be Semi- Ambulatory.

**N. Named Plaintiffs**

"Named Plaintiffs" means and refers to Larry McIver and HolLynn D'Lil, ISC, Inc., Christine Fitzgerald, Connie Arnold, Russ Bohlke, and Jeffrey Evans.

**O. Parties**

"Parties" means and refers to the California Exposition & State Fair, State of California, HolLynn D'Lil and Larry McIver. If Plaintiffs are permitted to file a Third Amended Complaint, Parties" shall also include ISC Plaintiffs ISC, Inc., Christine Fitzgerald, Connie Arnold, Russ

LAW OFFICES OF
PORTER, SCOTT, 28
WEIBERG & DELEHANT
A PROFESSIONAL CORPORATION
350 UNIVERSITY AVE., SUITE 200
P.O. BOX 255428
SACRAMENTO, CA 95865
(916) 929-1481
www.pswdlaw.com

00396042.WPD                    11

1  Bohlke, and Jeffrey Evans.

2  **P.    Performance Standards**

3  "Performance standards" shall mean and refer to those standards described and further

4  defined in paragraph VI(D).

5  **Q.    Plaintiffs' Counsel**

6  "Plaintiffs' Counsel" means and refers to Thimesch Law Offices.

7  **R.    Released Claims/Released Parties**

8  "Released Claims" and "Released Parties" shall mean and refer to those claims and parties

9  described and further defined in Section "V".

10  **S.    The Court**

11  "The Court" means and refers to the United States District Court for the Eastern District

12  of California and specifically Magistrate Judge Kimberly J. Mueller unless she becomes

13  unavailable, in which case another judge will be assigned to the case according to the Eastern

14  District's Local Rules.

15  **T.    Title 24**

16  "Title 24" means and refers to the regulations set forth at Title 24 of the California Code

17  of Regulations, 2001 edition, or the current version in effect at the time of planning and work,

18  provided no undue burden is created by subsequent changes in the code.

19  **U.    Vision Disability**

20  "Vision Disability" means and refers to any impairment or condition that substantially

21  limits an individual's ability to see. A person with a Vision Disability may be blind, legally blind,

22  or may have poor or low vision, which is not correctable through conventional eye wear.

23  **IV. COMPLIANCE PERIOD**

24  **A.    Term of Compliance Period**

25  The Parties agree that the Consent Decree shall become effective, and remain in effect for

26  up to fifteen (15) years from the date of Court Approval. It shall terminate automatically fifteen

27  (15) years after Approval unless otherwise terminated or extended as provided herein.

LAW OFFICES OF
PORTER, SCOTT, 28
WEIZBERG & DELEHANT
A PROFESSIONAL CORPORATION
350 UNIVERSITY AVE. SUITE 200
P.O. BOX 255428
SACRAMENTO, CA 95865
(916) 929-1481
www.pswdlaw.com

00396042.WPD          12

**B.     Monitoring in the Final Year**

Any reports and inspections to be produced or made at the end of the final year shall be made pursuant and subject to Section "VII".

**C.     Disputes in the Final Year**

If a dispute is pending at the time this Consent Decree would otherwise terminate, or arises from the Monitor's final report, the Consent Decree will remain in effect with respect to the issue(s) under dispute until the dispute is resolved and any obligations set forth as part of dispute resolution are implemented through the procedures specified in Section IX.

**D.     Effect of (IV) (B) & (C) on Annual Obligation**

Neither (IV) (B) nor (IV) (C) serve to extend the Annual Obligation time limitations as discussed in Section "VI".

**E.     Early Termination**

Any Defendant may petition the Court to terminate the Consent Decree at any time upon a showing that Cal Expo has fully complied with its terms. A petition brought under this provision should contain: (1) information demonstrating full compliance with and completion of the 10-Year Plan; and (2) information showing that Cal Expo has procedures to respond to issues concerning access to Cal Expo facilities in an ongoing manner. As an alternative to (1) above, the petition may demonstrate that any portion of the 10-year plan not yet performed is otherwise subject to Section (VI) (A)(6), (F)(2) or (G).[10]

The petition may contain any other information Defendant(s) believes is appropriate. Any Named Plaintiff may oppose or support such a motion.[11]

**F.     Further Extension**

Any Party may petition the Court for an extension of the Compliance Period, which shall

---

[10]  **COURT**: All of the subsections identified here are found in Section VI.

[11]  **COURT**: To the extent any plaintiffs support early termination, the parties are encouraged to enter into a stipulation confirming their agreement and submit a proposed order to the court.

LAW OFFICES OF
PORTER, SCOTT, 28
WEIBERG & DELEHANT
A PROFESSIONAL CORPORATION
350 UNIVERSITY AVE., SUITE 200
P.O. BOX 255428
SACRAMENTO, CA 95865
(916) 929-1481
www.pswdlaw.com

00396042.WPD                    13

1  be granted for good cause shown pursuant to Section (VI) (A)(6), (F)(2) or (G).[12] Any Party may
2  oppose or support such a motion.

3  ## V. RELEASE OF INJUNCTIVE AND DECLARATORY RELIEF CLAIMS

4  Except as otherwise provided in this Consent Decree, and subject to the fulfillment of the
5  conditions set forth in this Consent Decree, all Named Plaintiffs, for themselves, their successors
6  and their assigns, in return for the consideration provided for in this Consent Decree, hereby release
7  and forever discharge Defendants and their predecessors in interest, successors, assigns, officers,
8  directors, agents, attorneys, employees, contractors, lenders, insurers, and owners ("Released
9  Parties") from any and all injunctive and/or declaratory relief actions, causes of action, claims, or
10  other demands under the Americans with Disabilities Act, the Rehabilitation Act of 1973, and all
11  California disability access laws listed or contained within the operative complaint ("Released
12  Claims"). Named Plaintiff's claims for damages and attorney's fees, litigation expenses and costs
13  are not released by this Consent Decree and are hereby expressly reserved. The parties have
14  recently settled the individual damage claims of plaintiffs Larry McIver and HolLynn D'Lil, which
15  settlement is contingent upon execution of a standard release, the Court's approval of this Consent
16  Decree, and payment of consideration.[13]

17  This Consent Decree shall be a full, complete, and final disposition and settlement of any
18  claims for declaratory and injunctive relief that have been or could have been alleged in Federal
19  or State Court. With respect to the Released Claims resolved by this Consent Decree and Order,
20  the Named Plaintiffs acknowledge that they waive the provisions of and any benefits that may be
21  conferred by Civil Code section 1542 which reads:

22  **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE**
23  **CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER**
24  **FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN**

25

26  [12] **COURT**: See footnote 10 above.

27  [13] **COURT**: As of September 26, 2005, all remaining plaintiffs' damages claims also have

LAW OFFICES OF
PORTER, SCOTT,
WEIBERG & DELEHANT
A PROFESSIONAL CORPORATION
350 UNIVERSITY AVE., SUITE 200
P.O. BOX 255428
SACRAMENTO, CA 95865
(916) 929-1481
www.pswdlaw.com

28  been settled.

00396042.WPD                    14

1   **BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER**
2   **SETTLEMENT WITH THE DEBTOR.**

3   ## VI. INJUNCTIVE RELIEF

4   The Parties hereby agree that, upon Approval of the Consent Decree, Cal Expo shall
5   comply with the following to provide further access to Cal Expo's facilities:

6   **A.    Annual Obligation**

7   **1.**    During the Compliance Period, Cal Expo will annually dedicate funding to
8   implement its 10-Year Plan as follows: $100,000 per year in the first five (5) years with one (1)
9   of those years being $150,000 (which year shall be chosen by Cal Expo and based solely on its own
10  discretion); $133,000 per year for years six (6) through ten (10); and $100,000 per year for each
11  additional year (eleven (11) through fifteen (15)), if any.

12  **2.**    Spending more than the Annual Obligation in any given year will not
13  decrease the Obligation for any other year.

14  **3.**    To the extent Cal Expo obtains additional funding from private sources for
15  access improvements, such funding will supplement this Obligation.

16  **4.**    The Annual Obligation shall coincide with Cal Expo's fiscal year, which
17  runs from January 1 to December 31, or any pro-rated portion thereof should the consent decree
18  be approved, or should the Compliance Period end, on a date other than the first or last day of the
19  year.

20  **5.**    Work to be performed pursuant to the 10-Year Plan may be performed by
21  outside contractors, Cal Expo employees, or by a combination of both, in Cal Expo's discretion.
22  The cost of actual expenditures, not the value of the improvements, will be utilized to measure
23  compliance with this provision. The value of services or tasks performed by Cal Expo on an "in-
24  house" basis will be credited toward compliance with the Annual Obligation pursuant to Cal
25  Expo's reimbursable rate as published.

26  **6.**    Cal Expo may, in case of substantial financial hardship (and according to
27  the procedural requirements for motions under the Court's local rules), petition the Court for relief

LAW OFFICES OF
PORTER, SCOTT, 28
WEHBERG & DELEHANT
A PROFESSIONAL CORPORATION
350 UNIVERSITY AVE, SUITE 200
P.O. BOX 255428
SACRAMENTO, CA 95865
(916) 929-1481
www.pswdlaw.com

from the Annual Obligation by July 31 of each year. The Court shall provide such relief upon a

00396042.WPD                          15

1  sufficient showing of financial hardship. However, any relief granted in a fiscal year will terminate
2  upon the commencement of the following fiscal year unless ordered otherwise. It is understood
3  that the relief contemplated by this section is based on necessity and will be granted only for good
4  cause shown. The amount of any reduction in the Annual Obligation granted by the Court pursuant
5  to this section shall carry-forward and be added to the Annual Obligation imposed for the following
6  year, subject to the Court's discretion.

**B.     10-Year Plan**

Cal Expo shall perform the work required by the 10-Year Plan, **Exhibit "1"** hereto, subject
to the terms of this Decree.

**C.     New Construction and Alterations**

The cost of newly constructed or altered facilities performed[14] after Court Approval shall
not reduce, offset, nor increase the Annual Obligation.

**D.     Performance Standards**

All of the work to be performed herein under the 10-Year Plan shall be done in strict
compliance with the requirements of California Code of Regulations Title 24 and ADAAG,
whichever provides the stronger or greater level of protection to the affected disability classification
in terms of access, safety and protection, unless a lower standard, design, or measurement is
specified in the 10-Year Plan. Use of shorthand terms such as "move", "lower", "retrofit" and
"regrade" shall be construed to require such compliance. This provision is subject to (VI) (A)(6),
(F)(2) and (G).[15]

**E.     Construction Tolerances**

The work to be performed hereunder shall allow for any recognized construction tolerances
provided by state or federal law. This includes, but is not limited to, the construction tolerances
provided in the Handbook of Construction Tolerances, David Ken Ballast, McGraw Hill, 1994.

---

[14]  **COURT**: The court reads the word "performed" as "incurred by Cal Expo."

[15]  **COURT**: See footnote 10 above.

LAW OFFICES OF
PORTER, SCOTT,
WEIBERG & DELEHANT
A PROFESSIONAL CORPORATION
350 UNIVERSITY AVE., SUITE 200
P.O. BOX 255428
SACRAMENTO, CA 95865
(916) 929-1481
www.pswdlaw.com

00396042.WPD                16

**F.     Timeliness**

Defendant Cal Expo will complete the work required by the 10-Year Plan within ten (10) years, or within fifteen (15) years if despite its best and good faith efforts the work is not completed by the end of year ten (10), or alternatively if necessitated by the application of relief described in (VI) (A)(6), (F)(2) or (G).[16]  Any extension of time must be obtained pursuant to Section (IV)(F) above and changes or deletions to the 10-Year Plan will be set forth to the Monitor as required by Section (VII) (B) or a Motion for Early Termination pursuant to Section (IV).

**1. Permits and Planning**

Cal Expo shall apply to the appropriate local authority for any permits, if any are required, for work to be performed herein, in a timely manner (i.e. calculated to allow for completion of the work as specified in the 10-Year Plan) and Cal Expo shall prepare for work to be performed in a timely manner.

**2. Force Majeure**

Subject to the requirements of this Section, the time for performance shall allow for good faith interruptions due to inclement weather, contractor unavailability, permit delays not caused by Defendants, and other recognized causes under the Doctrine of Force Majeure.

**G.     Change in Circumstance**

Subject to the requirements of this section, Defendants shall not be required to perform work or other acts required by this Consent Decree, and the 10-Year Plan thereto, that is rendered moot or impossible by a material change in circumstance, such as the permanent closure of affected facilities from public use.  Defendant shall set forth any claim under this part in its annual report to the Monitor as required by Section (VII) (B) and any such claim shall be subject to the Dispute Resolution Procedure of Section (X).

**H.     Exclusions**

The Parties specifically exclude from the scope of this Consent Decree, and the 10-Year Plan, the access obligations imposed by state and federal law for all building additions and facilities

---

[16]  **COURT**: See footnote 10 above.

LAW OFFICES OF
PORTER, SCOTT,
WEIRERG & DELEHANT
A PROFESSIONAL CORPORATION
350 UNIVERSITY AVE, SUITE 200
PO BOX 255428
SACRAMENTO, CA 95865
(916) 929-1481
www.pswdlaw.com

00396042.WPD                    17

1  newly constructed, altered, structural repaired or[17] after the date of Court Approval of this Decree,
2  and exclude the facilities at Cal Expo currently and commonly known as the Administration
3  Building, Backstretch, Water World and Paradise Island.

## VII. REPORTS AND MONITORING

### A. Independent Monitor

To assist in ensuring compliance with this Consent Decree, Cal Expo will hire, consistent with State contracting requirements, a person or firm with substantial experience and expertise in disability access requirements. Cal Expo has selected and Named Plaintiffs have approved Zachary Nathan as the Independent Monitor. Mr. Nathan was selected from a list of at least ten individuals that Named Plaintiffs provided to Cal Expo. Mr. Nathan has accepted this assignment. If Mr. Nathan becomes unwilling to fulfill the duties of the post, or becomes unavailable at anytime during the term of the Consent Decree, the Parties will tender the issue to the Court for appointment of a new Independent Monitor. The Court will set the procedure for the Parties to conduct briefing and argument, or for the Court's review of qualifications.[18]

### B. Annual Reports

1.  The schedule provided by the 10-Year Plan shall control the work that Cal Expo is to perform in the first year. After the first year, and by July 31 of year two and each subsequent year of the Compliance Period, Cal Expo shall prepare a report setting forth a prospective plan of projects Cal Expo shall undertake to comply with its 10-Year Plan in the coming fiscal year, except that this shall not apply in the final year of the compliance period.

2.  By July 31 of each year of the Compliance Period, and within 60 days of the end of the final year, Cal Expo will prepare a report describing the actual work done to implement the requirements of the 10-Year Plan and this Consent Decree during the previous fiscal year. In

---

[17] **COURT**: The court reads the preceding three words as "or structurally repaired."

[18] **COURT**: If the parties are able to identify a mutually agreeable successor Independent Monitor, in the event of Mr. Nathan's unavailability, they shall provide written notice of the successor's selection in the form of a stipulation and proposed order, precluding the need for briefing.

LAW OFFICES OF
PORTER, SCOTT, 28
WEIBERG & DELEHANT
A PROFESSIONAL CORPORATION
350 UNIVERSITY AVE., SUITE 200
P.O. BOX 255428
SACRAMENTO, CA 95865
(916) 929-1481
www.pswdlaw.com

00396042.WPD                    18

1  addition to summaries of work done by Cal Expo to comply with the 10-Year Plan, such annual
2  report will also include:

3        **a.**      A summary or listing of all written complaints or requests for
4  removal of particular barriers received since the prior report.

5        **b.**      Summaries of work done to ensure access and/or remove access
6  barriers in conjunction with new construction and or alterations at Cal Expo.

7        **c.**      Information regarding implementation of the 10-Year Plan, or relief
8  from its requirements, obtained pursuant to applicable provisions of this Consent Decree.

9        **3.**      Cal Expo shall provide a copy of the reports required by this Section to the
10  Monitor and Plaintiffs' Counsel by August 31 of each year of the Compliance Period and within
11  60 days of the end of the final year.

12  **C.**     **Monitoring**

13        **1.**      During the Compliance Period and within 60 days after the production of
14  each Annual Report required by Section VII(B), the Monitor will inspect such of the work that has
15  been completed as he deems necessary, and subject to the limitations placed on the hours for which
16  the Monitor will be compensated each year, to ensure that such work satisfies the requirements of
17  the 10-Year Plan. The Monitor shall be granted reasonable access to Cal Expo's grounds upon
18  request and within 72 hours of such a request, including during the time of the State Fair and other
19  events.

20        2.      Within 30 days of inspection, the Monitor will produce a report of findings
21  and provide a copy of that report to Cal Expo and Plaintiffs' Counsel. Cal Expo will have 90 days
22  thereafter to remedy identified failures to satisfy the requirements of the 10-Year Plan, or 30 days
23  to determine that there is a dispute regarding compliance, and notify Plaintiffs' Counsel of their
24  position. Plaintiffs and Plaintiffs' Counsel must raise any issue or dispute with regard to the
25  Monitor's findings or report within 70 days of production of the report. Any dispute will be
26  resolved through the Dispute Resolution Procedure set forth at Section (IX).

27  **D.**     **Compensation for Monitoring**

28        1.      During each year of the Compliance Period, Cal Expo will pay Plaintiffs'

LAW OFFICES OF
PORTER, SCOTT,
WEIBERG & DELEHANT
A PROFESSIONAL CORPORATION
350 UNIVERSITY AVE., SUITE 200
P.O. BOX 255428
SACRAMENTO, CA 95865
(916) 929-1481
www.pswdlaw.com

00396042.WPD            19

1  Counsel up to a maximum of $3,000 under this Section, and at a reasonable hourly market rate, for
2  review of monitor reports, communications with the monitor, consultants, plaintiffs, and
3  defendants, and inspections, research, and informal resolution efforts. The cap shall also apply to
4  any reasonable costs or litigation expense incurred, including the cost of consultants. The cap shall
5  not apply to any motion work and appearances undertaken pursuant to the procedures in Section
6  (IX). Plaintiff's Counsel agrees to donate, pro bono, the first 5 hours of his time in any given
7  calendar year toward resolution efforts. Plaintiffs' Counsel will submit detailed records of fees and
8  costs quarterly. The fees provided by this section shall not preclude the Court from awarding fees
9  and costs to Plaintiff's Counsel for any motion and formal enforcement work undertaken pursuant
10  to the dispute resolution process specified under Section (IX)(D).

11         **2.** During each year of the Compliance Period, Cal Expo shall pay the approved
12  Monitor for up to 16 hours for on-site inspections and for up to 30 additional hours for preparation
13  of reports and any other document or act that may be required of the Monitor, or undertaken by
14  same, pursuant to this Section, subject to maximum total payments of $6,000 per year, which
15  amount will be increased each year starting at the beginning of year two pursuant to the standard
16  inflation rate published yearly by the U.S. Department of Labor, which is based on the Consumer's
17  Price Index. The Monitor will submit detailed records of fees and costs quarterly to Cal Expo.

18         **3.** Cal Expo shall pay such sums directly to the individual to whom it is owed
19  and such sums shall not be credited against Cal Expo's Annual Obligation.

20         **4.** The Parties may meet and confer regarding monitoring fee and/or cost issues.
21  In the event that a dispute arises, the Parties will proceed under the Dispute Resolution process of
22  Section (IX).

23  **E.     Administrative Liaison**

24  Cal Expo shall designate an employee to serve as an administrative liaison to the Monitor
25  and to Plaintiffs' Counsel regarding Cal Expo's compliance with this Consent Decree. The liaison
26
27

LAW OFFICES OF
PORTER, SCOTT, 28
WEIBERG & DELEHANT
A PROFESSIONAL CORPORATION
350 UNIVERSITY AVE., SUITE 200
P.O. BOX 255675
SACRAMENTO, CA 95865
(916) 920-1461
www.pswdlaw.com

00396042.WPD                    20

1  shall be responsible for coordinating and providing all reports required[19] by this Section, and to
2  respond to requests for information.

## VIII. APPROVAL OF CONSENT DECREE

4  Within thirty (30) days following Cal Expo's approval of this Consent Decree, the Parties
5  shall jointly move the Court for an Order granting its Approval. The Parties agree to seek such
6  Approval from the Honorable Kimberly Mueller, Magistrate Judge, U.S. District Court for the
7  Eastern District of California. Magistrate Judge Mueller has indicated her willingness to oversee
8  the approval and enforcement process, and she possesses knowledge of this case's history and an
9  understanding of the numerous technical and legal issues presented in this case.

## IX. DISPUTE RESOLUTION

### A.  Continuing Jurisdiction

12  The Parties agree that the Court may retain jurisdiction to interpret and enforce the terms
13  of this Consent Decree for the duration of the Compliance Period. The Parties further agree to
14  request that this authority be delegated to Magistrate Judge Kimberly Mueller in accordance with
15  28 U.S.C. § 636(c). Should Magistrate Judge Mueller become unavailable at any time during the
16  Compliance Period, the Parties shall jointly request that another Magistrate Judge be assigned in
17  accordance with the Eastern District's Local Rules.

### B.  Joint Agreement and No Contempt Citation or Decree

19  The Parties agree that if they or any of them seek Court enforcement of this Consent Decree
20  and Order, they shall do so pursuant to this Section. No Party will seek a contempt citation or
21  decree.

### C.  Dispute Resolution Process

23  Except as otherwise set forth herein, the Parties agree that all disputes concerning
24  interpretation, implementation, and/or compliance with this Consent Decree shall be resolved as
25  follows:

---

[19] **COURT**: The court understands the reports referenced here to mean those required of Cal Expo.

LAW OFFICES OF
PORTER, SCOTT, 28
WEIBERG & DELEMANT
A PROFESSIONAL CORPORATION
350 UNIVERSITY AVE., SUITE 200
P.O. BOX 255428
SACRAMENTO, CA 95865
(916) 929-1481
www.pswdlaw.com

00396042.WPD                            21

1.     The Party wishing to initiate the dispute resolution process shall notify the other Party(ies) and the other Party's(ies') counsel in writing of the nature of the dispute, including a reasonable explanation of the legal and factual basis of the dispute.

2.     The Parties to the dispute will then meet and confer in order to attempt to resolve the dispute directly.

3.     If the Parties involved in the dispute cannot resolve a dispute directly, they will request a mediation conference with the Court.

4.     Should mediation with the Court prove unsuccessful, either Party involved in the dispute can bring a motion to enforce the Consent Decree before the Court.  In accordance with 28 U.S.C. § 636(c), the Parties consent to allow a decision by a Magistrate of the Court,[20] acting to interpret and/or enforce the Consent Decree, to be appealed directly to the Ninth Circuit Court of Appeals.

**D.     Fees and Costs for Dispute Resolution**

1.     Any litigation expenses, including expert fees and costs, attorney fees and court costs may be awarded by the court pursuant to Christianberg Garment Co. v. EEOC, 434 U.S. 412 (1978) or other standard deemed applicable by the court.

2.     If an award of fees and costs is issued against Cal Expo pursuant to this Section, those fees and costs will not be paid out of the Annual Obligation unless the Court, in equity, determines such is appropriate.

3.     If an award of fees and costs is issued in favor of Cal Expo, such obligation will be the joint and several responsibility of the moving/opposing Party(ies), whichever is applicable.

**E.     Delay Due to Dispute Resolution**

---

[20] **COURT:** The parties previously have consented to Magistrate Judge Mueller for all purposes.  The court reads this section as confirming the parties' consent and their intent to submit any motions regarding enforcement of the Consent Decree to Magistrate Judge Mueller.  If a successor to Magistrate Judge Mueller is assigned to this case, the procedures and rules applicable in the Eastern District of California at the time of such assignment will govern who exercises dispositive authority at the district court level in this case.

LAW OFFICES OF
PORTER, SCOTT, 28
WEINBERG & DELEHANT
A PROFESSIONAL CORPORATION
350 UNIVERSITY AVE., SUITE 200
P.O. BOX 255424
SACRAMENTO, CA 95865
(916) 929-1481
www.pswdlaw.com

00396042.WPD                    22

1    The Parties agree that, if access work under the 10-Year Plan scheduled by Cal Expo is
2   delayed by the Parties in the dispute resolution process, the time deadlines for such access work
3   shall be extended a commensurate period of time.

## X. ATTORNEYS' FEES AND COSTS

Upon Approval of this Consent Decree Cal Expo will pay Plaintiffs' Counsel's reasonably incurred interim statutory attorneys fees, litigation expenses and costs incurred in the McIver and the ISC Actions, if the Parties reach agreement on the total amount owed, within sixty (60) days after Approval. Such fees shall be paid within thirty (30) days of reaching an agreement. The Parties request that the Court set a Settlement Conference before a Magistrate Judge to assist the Parties in resolving this claim.

If the Parties do not reach agreement on the amount of reasonable interim attorney fees, litigation expenses and costs within sixty (60) days after Approval, Plaintiffs' Counsel may thereafter file within sixty (60) days a Motion to recover such fees, litigation expenses and costs (including any available enhancement) for determination by the Court. Any litigation expenses, including expert fees and costs, attorney fees and court costs may be awarded by the court pursuant to Christianberg Garment Co. v. EEOC, 434 U.S. 412 (1978) or other standard deemed applicable by the court.

Notwithstanding any statement in this Decree regarding Defendants' dispute of the allegations and/or non-admission and denial of liability, the Parties agree that Plaintiffs have prevailing party standing to make a motion for reasonable fees, litigation expenses and costs. Defendants reserve all rights to oppose such a motion.

The Court's fees and costs determination shall be an order appealable directly to the Ninth Circuit Court of Appeals.

## XI. CONTINUING JURISDICTION

The Court shall retain continuing jurisdiction to interpret and enforce the Consent Decree as provided herein and to determine fees, litigation expenses and costs, if necessary. The Court shall also retain jurisdiction to resolve Plaintiff's remaining claims for statutory and compensatory damages. Each and all of the agreements of the Parties in this Consent Decree are contingent upon

LAW OFFICES OF
PORTER, SCOTT,
WEIBERG & DELEHANT
A PROFESSIONAL CORPORATION
350 UNIVERSITY AVE., SUITE 200
P.O. BOX 255428
SACRAMENTO, CA 95865
(916) 929-1481
www.pswdlaw.com

00396042.WPD                              23

the Court granting leave for Plaintiffs to file a Third Amended Complaint as contemplated herein, and the Court's acceptance of aforesaid continuing jurisdiction.

## XII. MISCELLANEOUS

### A.    Counterparts

This Consent Decree may be executed in counterparts, each of which will be considered an original, but all of which, when taken together, will constitute one and the same instrument. Facsimile signatures shall be considered valid as of the date thereof, although the original signature pages shall thereafter be appended to this Consent Decree and filed with the Court.

### B.    Interpretation

The language of this Consent Decree will be construed as a whole according to its fair meaning, and not strictly for or against any of the Parties. The headings in this Consent Decree are solely for convenience and will not be considered in its interpretation. Where required by context, the plural includes the singular and the singular includes the plural. This Consent Decree is the product of negotiation and joint drafting so that any ambiguity will not be construed against any Party.

### C.    Severability

In the event any portion of this Consent Decree is deemed to be unenforceable, or is in conflict with applicable law, the remainder of this Consent Decree will be enforced and will remain in full force and effect.

### D.    Non-Determination

The Court has made no findings concerning alleged violations of any law, whether state or federal, local, regulation, order or rule at this time, and the Parties expressly reserve the right to litigate these matters if this Consent Decree does not receive Approval. The Parties agree that nothing in this Consent Decree may be interpreted as an admission by any Party of any fact, legal principle, or conclusion. If, for any reason, Approval is not obtained, no evidence of this proposed Consent Decree shall be admissible for any purpose in The McIver Action, either of the ISC Actions, or other actions to be brought by Named Plaintiffs or Plaintiffs' Counsel.

### E.    Entire Agreement

LAW OFFICES OF
PORTER, SCOTT, 28
WEIZBERG & DELEHANT
A PROFESSIONAL CORPORATION
350 UNIVERSITY AVE. SUITE 200
P.O. BOX 255428
SACRAMENTO, CA 95865
(916) 929-1481
www.pswdlaw.com

00396042.WPD                                24

1    This Consent Decree, including its Exhibit, expresses and constitutes the sole and entire

2    agreement between the Parties and supersedes all prior agreements, negotiations and discussions

3    between the Parties and/or their respective counsel with respect to the subject matter of the McIver

4    Action, the ISC Actions, and/or this Consent Decree. The Consent Decree supersedes any prior

5    or contemporaneous oral or written agreements or understandings between and among the Parties

6    and/or counsel for the Parties regarding the subject matter of the McIver Action, the ISC Actions

7    and/or this Consent Decree.

8    **F.    Additional Documents**

9        To the extent any documents are required to be executed by any of the Parties to effectuate

10   this Consent Decree, each Party hereto agrees to execute and deliver such and further documents

11   as may be required to carry out the terms of this Consent Decree.

12   **G.    Cal Expo's Approval**

13       The signature herein below of Brian May, a Cal Expo Assistant General Manager, indicates

14   that he has obtained prior approval of this document through Cal Expo's Board of Directors.

15   **H.    Authority**

16       Each Party represents to all other Parties that such Party has the full power and authority

17   to enter into this Consent Decree, that the execution and delivery thereof will not violate any

18   agreement to which such Party is a party or by which such Party is bound, and that this Consent

19   Decree, as executed and delivered, constitutes a valid and binding obligation of such Party,

20   enforceable in accordance with its terms. The signatories to this Consent Decree expressly warrant

21   that they have been authorized to execute this Consent Decree and to bind their respective Parties

22   to the terms and provisions herein.

23   **I.    Knowing Agreement**

24       Each Party to this Consent Decree acknowledges that it has been represented by legal

25   counsel, and that each Party has reviewed, and has had the benefit of legal counsel's advice

26   concerning, all of the terms and conditions of this Decree.

27   **J.    Successors**

28       This Consent Decree shall be binding upon and inure to the benefit of the respective heirs,

LAW OFFICES OF
PORTER, SCOTT,
WEIBERG & DELEHANT
A PROFESSIONAL CORPORATION
350 UNIVERSITY AVE., SUITE 200
P.O. BOX 255608
SACRAMENTO, CA 95865
(916) 929-1481
www.pswdlaw.com

00396042.WPD                                    25

1  successors, assigns and representatives of the Parties. To the extent permitted by law, the Parties
2  intend that this Consent Decree and Order shall additionally be binding upon all persons with
3  disabilities similarly situated to the Named Plaintiffs in relation to injunctive relief claims, and that
4  the terms of this Consent Decree shall have the effect of res judicata and/or collateral estoppel
5  against injunctive relief claims. However, the Decree shall not preclude claims for damages by
6  persons with disabilities, if any, including under tort or as provided by statute.[21]

7  **K.     Non-Application to Defendant Ray Cammack Shows, Inc.**

8  No part of this Consent Decree shall be construed to affect Named Plaintiffs' ongoing legal
9  claims, or any actions, against Defendant RAY CAMMACK SHOWS, INC., which shall remain
10  in full force and effect.[22]

11  **L.     Appealability**

12  Unless otherwise stated, any order issued by the Court pursuant to this Consent Decree shall
13  be appealable to the Ninth Circuit Court of Appeals.

14  **M.     Deadlines**

15  Any deadlines imposed under this Decree shall be subject to the extensions imposed
16  by Fed. Rules of Civ. Pro., Rule 6.

17  Dated: September 9 , 2005                    TIMOTHY S. THIMESCH

18                                             THIMESCH LAW OFFICES

19

20                                             Attorney for Plaintiffs

21

22  Dated: _____, 2005
                                             Plaintiff Hollynn D'Lil
23

24  Dated: _____, 2005
                                             Plaintiff Larry McIver
25

26

27  [21]  **COURT:** See footnote 2 above.

28  [22]  **COURT:** Concurrently with its qualified approval of this Consent Decree, the court is
approving a Consent Decree as to Ray Cammack Shows.

LAW OFFICES OF
PORTER, SCOTT,
WEIBERG & DELEHANT
A PROFESSIONAL CORPORATION
350 UNIVERSITY AVE., SUITE 200
P.O. BOX 255428
SACRAMENTO, CA 95865
(916) 929-1481
www.pswdlaw.com

00396042.WPD                              26

1

2   Dated: _____, 2005
_____
Plaintiff Connie Arnold

3

4   Dated: _____, 2005
_____
Plaintiff Russ Bohlke

5

6   Dated: _____, 2005
_____
Plaintiff Christine Fitzgerald

7

8   Dated: _____, 2005
_____
Plaintiff Jeffrey Evans

9

10  Dated: _____, 2005
_____
Plaintiff ISC, Inc.

11  By and Through Officer Russ Bohlke
Authorized Representative

12

13  Dated: _____, 2005
STEPHEN E. HORAN, ESQ.
PORTER, SCOTT, WEIBERG & DELEHANT

14

15  _____
Attorneys for Defendant

16  CALIFORNIA EXPOSITION & STATE FAIR

17

18  Dated: _____, 2005
_____
Brian May, Assistant General Manager

19  Defendant CALIFORNIA EXPOSITION &
STATE FAIR

20

21  Dated: _____, 2005
CARYN L. CRAIG, ESQ.
OFFICE OF THE ATTORNEY GENERAL

22  OF THE STATE OF CALIFORNIA

23

24  _____
Attorneys for Defendant

25  STATE OF CALIFORNIA[23]

26

27

LAW OFFICES OF
PORTER, SCOTT,
WEIBERG & DELEHANT
A PROFESSIONAL CORPORATION
350 UNIVERSITY AVE., SUITE 200
P.O. BOX 255428
SACRAMENTO, CA 95865
(916) 929-1481
www.pswdlaw.com

28

[23] **COURT:** The court acknowledges receipt of a copy of the proposed consent decree signed by all parties and counsel, and submitted to the court on September 18, 2005.

00396042.WPD                                27

# EXHIBIT B

1  **Thimesch Law Offices**
   TIMOTHY S. THIMESCH, ESQ., No. 148213
2  MICHELLE L. THIMESCH, ESQ., No. 140591
   171 Front Street, Suite 102
   Danville, CA 94526-3321
3  Direct: 925/855-8235
   Fax: 925/855-8435

4  Attorneys for Plaintiffs
   LARRY MCIVER, HOLLYNN D'LIL, ISC, INC., RUSS BOHLKE, CHRISTINE FITZGERALD, CONNIE
5  ARNOLD, and JEFFREY EVANS

6  BOYD F. JENSEN, II, ESQ. (No. 91058)
   BETTY FRACISCO, ESQ. (No. 150658)
   GARRETT & JENSEN
7  433 Civic Center Drive West
   Santa Ana, CA 92702-2002
8  Tel: 714/550-0100

   Attorneys for Defendant RAY CAMMACK SHOWS, INC.
9

10                                    U.S. DISTRICT COURT
                              EASTERN DISTRICT OF CALIFORNIA
11
   LARRY MCIVER and HOLLYNN D'LIL,            CASE NO. S-2:01-1967 KJM
12                                             Civil Rights
   Plaintiffs,
13 v.

                                              CONSENT DECREE WITH COURT
14 THE CALIFORNIA EXPOSITION &                ANNOTATIONS
   FAIR, aka "Cal Expo"; STATE OF
15 CALIFORNIA; RAY CAMMACK SHOWS,
   INC.; and DOES 1-5000, Inclusive,
16 Defendants.

17 _____/

18 ISC, INC., RUSS BOHLKE, CHRISTINE          CASE NO. CIV-S-04-1790 KJM
   FITZGERALD, CONNIE ARNOLD, and             Civil Rights
   JEFFREY EVANS,                             Related Action
19
                 Plaintiffs,
20 v.

21 THE CALIFORNIA EXPOSITION &
   FAIR, aka "Cal Expo"; RAY CAMMACK
22 SHOWS, INC.; and DOES 1-50,000, Inclusive,

                 Defendants.
23 _____/

24            1.    Plaintiffs LARRY MCIVER and HOLLYNN D'LIL filed the action

25 encaptioned McIver, et al v. Cal Expo & Fair et al Case No.: S-01-1967 KJM (Hereafter "McIver

26 Action") for themselves to enforce provisions of the Americans with Disabilities Act of 1990

27 ("ADA"), 42 U.S.C. §§ 12101 et seq., and California's Civil Rights laws, against defendants RAY

28 CAMMACK SHOWS, INC. ("Defendant(s)" and/or "RCS"). Similarly, the plaintiffs ISC, INC.;

00395625.WPD                                   1

1   RUSS BOHLKE; CHRISTINE FITZGERALD; CONNIE ARNOLD; and JEFFREY EVANS filed

2   two separate proposed class actions against RAY CAMMACK SHOWS, INC., filed two proposed

3   class actions encaptioned ISC, Inc et al v. Cal Expo & Fair et al, Case No: CIV-S-04-1790 EJG JFM

4   et al. (U.S. District Court, Eastern District of California-Sacramento) (Hereafter "ISC Federal

5   Action"), and ISC, Inc et al v. Cal Expo & Fair et al Case No: 03AS05963 (Superior Court of

6   California-Sacramento) (Hereafter, "ISC State Action"). The plaintiffs in the ISC actions likewise

7   sought to ensure enforcement of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.

8   §§ 12101 et seq. Hereafter, the Plaintiffs in the three actions, i.e., the McIver Action, the ISC

9   Federal Action and the ISC State Action, shall be referred to collectively and alternately as

10  "Plaintiffs" or "Named Plaintiffs."[1]

11          2.      Plaintiffs allege that Defendants violated Title III of the ADA, Section

12  302(b)(2) [42 USC 12182(b)(2)], and the corresponding "full and equal" access provisions of

13  California Civil Code Sections 51 and 54.1, et seq., by failing to comply with barrier removal

14  provisions to full and equal access to their privately owned rides, concessions and attractions

15  provided annually during the State Fair at Cal Expo in Sacramento, California.

16          3.      Defendant RAY CAMMACK SHOWS, INC. denies these allegations, and

17  by entering into this CONSENT ORDER, RCS does not admit liability to the allegations in

18  plaintiffs' Complaint filed in this action. The Parties hereby enter into this CONSENT ORDER for

19  the sole purpose of resolving this lawsuit without the need for protracted litigation.

20  **I.      JURISDICTION**

21          4.      The Parties agree that the Court has jurisdiction of this matter pursuant to

22  28 USC §1331 for alleged violations of the Americans with Disabilities Act of 1990, 42 USC 12101

23

24  _____

25  ¹ Plaintiff Michael Dunne was originally a named plaintiff in the McIver Action, and
    Plaintiff Earl Welsh in the ISC Actions. Mr. Dunne was dismissed without prejudice by Order dated

26  October 14, 2004. A similar Stipulation and Proposed Order is now pending in relation to Mr.
    Welsh.

27

28  **COURT**: The docket does not reflect the filing of a stipulation as to Mr. Welsh. The court's order
    approving this consent decree with clarifications and modifications dismisses Mr. Welsh as a party
    in this action.

1   *et seq.* and pursuant to pendant jurisdiction for alleged violations of California Civil Code Sections
2   54; 54.1; 54.3; and 55. The Parties additionally acknowledge that for each disability classification
3   covered by this decree, the Named Plaintiffs as a group have standing for Article III purposes to
4   pursue the injunctive relief claims resolved by this decree, and have so sufficiently demonstrated
5   with verifiable evidence of their disability, and their injury and future injury through sufficient
6   exposure and use of the park and its facilities covered hereunder. The Parties stipulate, however, that
7   the foregoing acknowledgment shall constitute privileged and confidential settlement matter that
8   shall not be admissible as evidence in any proceeding or trial concerning the damage claims of
9   Named Plaintiffs. The Parties stipulate, however, that the foregoing acknowledgment shall
10  constitute privileged and confidential settlement matter that shall not be admissible as evidence in
11  any proceeding or trial concerning the damage claims of Named Plaintiffs.[2]

12  ## II.   RECITALS

13          5.      The current operative complaint is Plaintiffs' Second Amended Complaint,
14  filed June 2, 2002. Plaintiffs will request permission to file a Third Amended Complaint in
15  conjunction with the submission of this Consent Decree to include the claims of certain named
16  plaintiffs in ISC v. Cal Expo, et al., Superior Court No. 03AS05963 (hereafter "ISC State Action")
17  and ISC v. Cal Expo, et al., U.S.D.C., E. Dist. of Calif., No. CIV-S-04-1790 KJM (Hereafter
18  "Federal ISC Action"). (Hereafter, the two ISC cases may be referred to as "The ISC Actions.")
19  McIver Plaintiffs D'Lil and McIver, and named ISC Plaintiffs Christine Fitzgerald, Connie Arnold,
20  Russ Bohlke, Jeffrey Evans and ISC, Inc. and Defendant Ray Cammack Shows, Inc., along with
21  Defendants Cal Expo and the State of California, who are both not parties to this Consent Decree,
22  have agreed to jointly stipulate to Plaintiffs' filing of a Third Amended Complaint. The individual
23  Named Plaintiffs (excluding ISC, Inc.) are each persons with a Mobility Disability and/or Vision
24  Disability who regularly use the public facilities at Cal Expo.

27
28  ---
    [2] **COURT**: The court clarifies that while the parties apparently have agreed they will not
    seek to admit the information referenced here, determinations of admissibility shall be made by the
    court.

1    6.    The Parties joint stipulation provides that if the Court grants Plaintiffs leave

2  to file a Third Amended Complaint that will incorporate the above-named ISC Plaintiffs and their

3  claims, that the Federal and State ISC Actions will be dismissed, if and when the Court approves the

4  Consent Decree as provided elsewhere herein. The Parties stipulation further provides, *inter alia,*

5  that the ISC Plaintiffs factual allegations incorporated into the Third Amended Complaint shall relate

6  back to the date of the original filings of the respective Federal and State ISC Actions, all Named

7  Plaintiffs' claims for attorneys fees, litigation expenses and costs incurred in the State and Federal

8  ISC actions shall be deemed incurred in the present McIver action, and for this purpose the three

9  actions shall be deemed inextricably intertwined. The Parties agree that the factual allegations in the

10  Third Amended Complaint shall relate back to the original filings in each of the respective individual

11  actions.  This stipulation is supported by standard principals relating to tolling agreements and

12  waiver of defenses.[3]

13    7.    The Parties contemplate and understand that this Consent Decree fully

14  resolves any and all injunctive relief issues relating to Mobility and Vision Disabilities.[4] The Parties

15  agree that the Court has jurisdiction of this matter pursuant to 28 USC §1331 for alleged violations

16  of the Americans with Disabilities Act of 1990, 42 USC 12101 *et seq.* and pursuant to pendant

17  jurisdiction for alleged violations of California Civil Code Sections 54; 54.1; 54.3; and 55.  For

18  purposes of this consent decree, the Parties stipulate that each of plaintiffs have suffered and are

19  suffering sufficient injury in fact to pursue this action on behalf of the general public interest, and

20

21

22

23

24    [3] **COURT**:  The court adopts the parties' stipulation regarding the relation back of claims
with the clarification that the stipulation will be enforced to the extent allowable by law, with the
25  status of the law to be litigated at the time of any dispute based on the relation back doctrine.

26    [4] Plaintiffs' Experts, Barry Atwood and Karl Danz, prepared a 3 volume report identifying
27  barriers to access on the midway, which shall provide helpful context as to this agreement.
However, the signatory defendants are not required by this Decree to perform the work described in
28  the Atwood/Danz Report.  It is referred to here and defined below for the purpose of describing the
scope contemplated by the negotiations and compromise reached in this matter.

00395625.WPD                                4

1     have so demonstrated through sufficient evidence of exposure and use of the facilities and/or
2     deterrence.[5]

3     **III.**     **DEFINITIONS**

4            8.       As used in this Consent Decree, the following terms shall have the meaning
5     ascribed to them in this Section. Except to the extent expressly stated to the contrary, any term not
6     defined in this Section, or elsewhere in this Consent Decree, that has an expressly defined meaning
7     in either the ADA or the regulations promulgated pursuant thereto ("Regulations") shall have the
8     meaning ascribed to it by the ADA or the Regulations, in that order of preference.[6] All other terms
9     shall be interpreted according to their plain and ordinary meaning.

10         **A.**     **ADA**

11            "ADA" means and refers to the Americans with Disabilities Act as contained at 42
12     U.S.C. § 12101 et seq.

13         **B.**     **ADAAG**

14            "ADAAG" means and refers to the Americans with Disabilities Act Accessibility
15     Guidelines, codified at Appendix A to 28 Code of Federal Regulations, Part 36 and at Appendix A
16     to 49 Code of Federal Regulations, Part 37.

17         **C.**     **APPROVAL**

18            "Approved," "Approval" or "Court Approval" means and refers to the approval by
19     the Court in Case No. S-2:01-1967 KJM of the terms of this Consent Decree, the concurrent

20

21

22

---

23     [5] **COURT**: As the court previously has advised the parties, it does not believe this decree
    can be enforced to prevent parties not in privity with plaintiffs from bringing actions if such parties
24     otherwise have the right to do so. See Headwaters, Inc. v. U.S. Forest Service, 399 F.3d 1047, 1052-
    54 (9th Cir. 2005). The court notes plaintiffs have never sought class certification or demonstrated
25     to the court in a manner to support the court's independent determination that this consent decree
    is structured to protect "strangers" to this case. Id. at 1056. Thus, the court approves the decree's
26     incorporation of language referencing "similarly situated members of the public" only to the extent
    allowable by law, with resolution of res judicata to be resolved by litigation in the future to the extent
27     the question is raised by future filings.

28     [6] **COURT**: The parties have represented to the court that in the case of a conflict as to
    meaning, the ADA will control.

00395625.WPD            5

1  Stipulation for Leave to File the Third Amended Complaint, and the Court's consent to maintain

2  jurisdiction to interpret and enforce the terms of this Consent Decree.

3  ## D.   ATWOOD REPORT

4  "Atwood Report" means the 3 Volume Report prepared by Plaintiffs' Consultant,

5  Barry Atwood, and served on Defendants as part of expert designations in this case. The report will

6  be maintained by plaintiffs' counsel and made available upon request by any Party or person.

7  ## E.   CALIFORNIA DISABILITY ACCESS LAWS

8  "California Disability Access Laws" refers to the Unruh Civil Rights Act, California

9  Civil Code §§ 51 et. seq., California Civil Code §§ 54 et. seq., Government Code §§ 4450 and 1135

10  et. seq., Health and Safety Code §§ 19952 and 19955, as well as those portions of the California

11  Building Code (Title 24 of the Code of Regulations) that set forth scoping requirements for structural

12  access in new and altered facilities.

13  ## F.   CONSENT DECREE

14  "Consent Decree" means and refers to this document, "Consent Decree and Order".

15

16  ## G.   COMPLIANCE

17  "Compliance," "Compliant" and "Comply" mean and refer to substantial satisfaction

18  of the dictates of this Consent Decree and the performance standards specified herein.

19  ## H.   DEFENDANT

20  "Defendant" means and refers to the RAY CAMMACK SHOWS, INC.

21  ## I.   DEFENSE COUNSEL

22  "Defense Counsel" refers to the law firm of Garrett & Jensen.

23  ## J.   MOBILITY DISABILITY

24  "Mobility Disability" means and refers to any physical impairment or condition that

25  substantially limits an individual's ability to move his or her body or a portion of his or her body and

26  includes, but is not limited to, orthopedic and neuro-motor disabilities and any other impairment or

27  condition that limits an individual's ability to walk, maneuver around objects, ascend or descend

28

00395625.WPD                                   6

1 | steps or slopes, and operate controls. An individual with a Mobility Disability may use a wheelchair

2 | or motorized scooter for mobility, or may be semi- ambulatory.

3 | **K.     NAMED PLAINTIFFS**

4 | "Named Plaintiffs" means and refers to Larry McIver and HolLynn D'Lil, Christine

5 | Fitzgerald, Connie Arnold, Russ Bohlke, Jeffrey Evans and ISC, Inc.

6

7

8 | **L.     PARTIES**

9 | "Parties" means and refers to the California Exposition & State Fair, State of

10 | California, HolLynn D'Lil and Larry McIver, Christine Fitzgerald, Connie Arnold, Russ Bohlke,

11 | Jeffrey Evans and ISC, Inc.

12 | **M.     PERFORMANCE STANDARDS**

13 | "Performance standards" shall mean and refer to those standards described and further

14 | defined in paragraph VI(D).

15 | **N.     PLAINTIFFS' COUNSEL**

16 | "Plaintiffs' Counsel" means and refers to Thimesch Law Offices.

17

18 | **O.     RELEASED CLAIMS/RELEASED PARTIES**

19 | "Released Claims" and "Released Parties" shall mean and refer to those claims and

20 | Parties described and further defined in Section "V".

21 | **P.     THE COURT**

22 | "The Court" means and refers to the United States District Court for the Eastern

23 | District of California and specifically Magistrate Judge Kimberly J. Mueller unless she becomes

24 | unavailable, in which case another judge will be assigned to the case according to the Eastern

25 | District's Local Rules.

26 | **Q.     TITLE 24**

27

28

00395625.WPD                                   7

1    "Title 24" means and refers to the regulations set forth at Title 24 of the California

2 Code of Regulations, 2001 edition, or the current version in effect at time of planning and work,

3 provided no undue burden is created by subsequent changes in the code.

4    **R.    VISION DISABILITY**

5    "Vision Disability" means and refers to any impairment or condition that substantially

6 limits an individual's ability to see. A person with a Vision Disability may be blind, legally blind,

7 or may have poor or low vision, which is not correctable through conventional eye wear.

8

9

10   **IV.    PURPOSE AND BINDING EFFECT**

11    9.    The Parties desire to resolve their differences and disputes by settling the

12 declaratory and injunctive relief claims in the McIver lawsuit, as well as the declaratory and

13 injunctive relief claims of all ISC Plaintiffs, subject to amendment of the claims and consent of the

14 Parties, so as to:

15    10.    Resolve the claims for programmatic access brought by plaintiffs against

16 separate defendant California Exposition & State Fair to the Midway facilities at Cal Expo for

17 qualified individuals with disabilities, including Mobility and Vision Disabilities, as required under

18 federal and state law;[7]

19    11.    Provide a means for physical access to certain negotiated rides, attractions and

20 concessions as required under federal and state law for qualifying individuals with disabilities;

21    12.    Assure that no one, including the Named Plaintiffs, nor other persons similarly

22 situated, will attempt to enforce conflicting standards against the RCS's carnival operation at Cal

23 Expo regarding compliance with Title III of the ADA;[8]

24    13.    Assure that, pursuant to the holding of Headwaters, Inc. v. U.S. Forest Service

25 (2005) 399 F.3d 1047, 1052, no one found to be in privity and adequately represented by the Named

26 Plaintiffs in this action, including the Named Plaintiffs, nor other persons similarly situated, shall

27 _____

28    [7] **COURT**: See footnote 5 above.

    [8] **COURT**: See footnote 5 above.
    00395625.WPD                    8

1  hereafter assert the same claims for injunctive relief (arising out of the same nucleus of fact
2  necessary to establish liability), which would require Defendants to make additional and/or different
3  modifications to RCS's carnival operation at Cal Expo or to follow different standards beyond what
4  is agreed to herein, in order to comply with the existing obligations under provisions of Titles II and
5  III of the ADA, Section 504, or California disability access laws;[9] and

6

7

8            14.     Avoid the uncertainties and costs of further and future litigation for all Parties.

9            15.     Furthermore, RCS' self-evaluations, guides and efforts, previously undertaken
10  pursuant to the Americans with Disabilities Act to ensure access to its programs, services, activities
11  and facilities, are hereby supplemented and amended by this Consent Decree.

12           16.     This Consent Decree shall be binding upon Plaintiffs, on behalf of themselves
13  and all their individual heirs, agents, assigns, attorneys, and all other successors-in-interest
14  (hereinafter jointly and collectively designated "PLAINTIFFS"), and RAY CAMMACK SHOWS,
15  INC., and all other ownership or successors in interest owners of RAY CAMMACK SHOWS, INC.,
16  and for its officers, directors, members, employees, franchisers, franchisees, licensees, attorneys,
17  agents, insurers, owners, purchasers, sharcholders, members, parent companies, subsidiaries and
18  affiliates and all of their respective predecessors, successors and assigns (hereinafter collectively
19  referred to as "Defendants" and/or "RCS")).

20           17.     The Parties agree to entry of this Order in order to resolve the below listed
21  allegations raised in the Second Complaint filed with this Court on June 7, 2002, the First Amended
22  Complaint filed in the ISC Federal Action filed on April 14, 2004, and the original complaint filed
23  in the ISC State Action on August 27, 2004.  Accordingly, and subject to the Court's Approval of
24  consolidation and the filing of a Third Amended Complaint, the Parties agree to the entry of this
25  CONSENT DECREE without trial or further adjudication of any issues of fact or law concerning
26  the issues specified herein, and without prejudice to plaintiffs' reservation of remaining damage
27  claims and for attorney fees, litigation expenses and costs.

28  _____

    [9] **COURT**:  See footnote 5 above.
    00395625.WPD                              9

1    WHEREFORE, the Parties hereby agree and stipulate to the Court's entry of this
2  CONSENT ORDER, which provides as follows:

3  ## V.    RESOLUTION OF INJUNCTIVE RELIEF

4    18.    Except as specified in paragraph 38, below, this CONSENT DECREE shall
5  be a full, complete, and final disposition and settlement of the claims for injunctive relief that have
6  been or could have been alleged in the Complaint. The Parties agree that there has been no admission
7  or finding of liability or violation of the ADA and/or California civil rights laws, and this CONSENT
8  ORDER should not be construed as such. The Court shall retain jurisdiction of this action to enforce
9  and interpret this CONSENT DECREE. The Parties agree that if they or any of them seek Court
10  enforcement of this CONSENT DECREE and Order, any such enforcement will be by noticed
11  motion, application or other appropriate request for an order for specific performance and that a
12  contempt citation or decree will not be sought by any party.

13    19.    With respect to the injunctive relief claims resolved by this Order, the Parties
14  acknowledge that they waive the provisions of and any benefits that may be conferred by Civil Code
15  section 1542 which reads:

16    **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE**
17    **CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER**
18    **FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF**
19    **KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS**
20    **OR HER SETTLEMENT WITH THE DEBTOR.**

21  The provisions of this paragraph shall not affect the reserved issues specified in paragraph 38,
22  below.

23  ## VI.    INJUNCTIVE RELIEF

24    20.    The defendants agree to perform the following work to provide disabled
25  access:

26
27
28

00395625.WPD                    10

## A.   RIDES AND ATTRACTIONS:

21.   **Time for Compliance.** Unless other time periods are specifically set forth below, it is hereby agreed between the Parties hereto that the Rides and Attractions identified below will be made "accessible" in accordance with their accompanying provisions. Said obligations shall commence August 1, 2006 or the commencement of the California State Fair 2006. In the case of the Bumble Bee ride, the modifications shall be completed by August 1, 2008 or the commencement of the 2008 California State Fair.

22.   **Ramps.** RCS will modify 5 rides to provide disabled access via a ramp to the respective loading platform. The 5 rides RCS designates are:

1)   Bumble Bee

2)   La Grande Wheel

3)   Silver Streak

4)   Sound Wave

5)   Zipper

RCS may employ generic portable ramps that shall conform to the specifications provided for "ramps" under Title 24 and ADAAG regulations. The ramps shall be extended to the ride platform or to a point where the patron may touch a single ride vehicle. RCS shall develop a written policy and enforced practice of not using the aforementioned ramps (and any access ramps added to other rides in the future) for queuing customers. RCS shall further include within their training materials and corporate policies the requirement to utilize ramps for other rides where feasible, and exercise good faith in implementing and enforcing this provision.

23.   **Further Ride Modifications.**

a)   RAY CAMMACK agrees that the following list of rides shall be made further "accessible" in accordance with subparagraphs (b), (c) and (d), below:

1)   Bad Lands Express

2)   Bear Affair

3)   Berry Go Round

4)   Big Eli Wheel

00395625.WPD                                11

5)   Bumble Bee

6)   Carousel

7)   Chaos

8)   Dragon Wagon

9)   Free Fall

10)   Ghost Pirates

11)   Hi Miler

12)   Kamikaze

13)   Kite Flyer

14)   La Grande Wheel

15)   Lolly Swings

16)   Orbiter

17)   Rockin' Tug

18)   Silver Streak

19)   Sky Ride

20)   Sound Wave

21)   Spidermania

22)   Toon Town

23)   Tornado

24)   Twist

25)   Wave Runner

26)   Yo Yo

27)   Zipper

b)   For all rides and attractions owned by RCS with fenced enclosures, including, but not limited to, any ride or attraction with a fenced enclosure that is identified above in subparagraph 23(a) and below and at paragraphs 22 and 25, the gated entries shall be modified where necessary to strictly comply with Title 24 and ADAAG to provide a minimum clear opening of 32 inches. This shall be accomplished within 3 years of the date of this Order. As new rides are

1  purchased, 32 inch entry widths shall be specified, and where old entry gates are replaced, the new

2  entry gates shall have 32 inch minimum clear openings. Thresholds at the modified, purchased and

3  replaced entrances shall not exceed 1/2 inch *beveled* per increment of rise.

4              c)      For all rides and attractions owned by RCS, including, but not limited

5  to, any ride or attraction with a fenced enclosure that is identified above in subparagraph 23(a) and

6  below and at paragraphs 22 and 25, RCS shall prepare and maintain written materials and media

7  materials which can be used in training all current and future employees on the procedures and

8  policies regarding accessibility to Rides and Attractions. Said training shall be mandatory for all

9  employees on a yearly basis with reviews and on-the-job training as necessary. Said training shall

10  include operational guidelines; use of appropriate language, in the policies, procedures and signage

11  at or near Rides and Attractions; and the procedures for responding to special guest requests based

12  upon the nature of the disability, including temporary movement of fencing, gates or other barriers

13  normally required because of regulation or safety. A special section of the operating procedures for

14  each applicable attraction shall include the appropriate text and shall be maintained on a yearly basis

15  at a central location and available for inspection and training.

16              d)      RCS shall provide appropriate signage for each of the applicable Rides

17  and Attractions indicating their accessibility to disabled patrons and applicable instructions.

18              e)      RCS shall, on a yearly basis, prepare a written brochure which contains

19  a general description of all its rides and attractions, with explanations of their accessibility and

20  whether special procedures such as "Accessible Through Exit" as opposed to a regular queue line

21  apply. Said brochures shall be available at ticket booths and the Guest Relations Station. Accessible

22  midway routes will be explained in situations where the existence of cables or terrain would

23  otherwise prevent access to the midway.

24              24.     The Parties agree that there are extraordinary situations depending on last

25  minute changes, for example ride replacements, extreme weather conditions or ride modifications

26  which could affect the ability of RCS to comply with these agreements respecting the Rides and

27  Attractions. It is agreed that RCS may deviate from compliance with these standards if upon the

28  exercise of good faith and reasonableness unanticipated changes, modifications or the weather make

00395625.WPD                            13

1  compliance impractical or impossible.  Such deviations shall be temporary and in no circumstance

2  exist longer than one season.

3      25.      It is agreed that Rides and Attractions where loading platforms exceed 60

4  inches in vertical rise above the adjacent grade or where the attractions would require a fundamental

5  alteration in the nature of the activity to provide access are not subject to accommodation through

6  a ramp or other vertical means of access.   Current examples of such rides are set forth below:

7       1)    Big Eli

8       2)    Clown Glass House

9       3)    Cuckoo House

10      4)    Dragon Wagon

11      5)    EuroSlide

12      6)    Experience

13      7)    Free Fall

14      8)    Fun Train

15      9)    Ghost Pirates

16      10)   Goliath Slide

17      11)   Hi Miler

18      12)   HydroSlide

19      13)   Inverter

20      14)   Kamikaze

21      15)   Li'l Raiders

22      16)   Mardi Gras

23      17)   Moscow Circus

24      18)   StarShip 2000

25      19)   Survival Island

26      20)   Tilt-a-Whirl

27  **B.     MIDWAY ACCESS**

28      26.     RCS shall prepare and maintain written materials and media materials which

00395625.WPD                                14

1  can be used in training current and future employees on the procedures and policies regarding

2  Midway Access. Said training shall be mandatory for all employees on a yearly basis with reviews

3  and on-the-job training as necessary. Said training shall include operational guidelines; use of

4  appropriate language, in the policies, procedures and signage at or near the Midway; and the

5  procedures for responding to special guest requests based upon the nature of the disability, including

6  temporary movement of fencing, gates or other barriers normally required because of regulation or

7  safety.

8       27.    RCS shall provide appropriate signage for Main Midway Access Points

9  indicating routes, their accessibility to disabled patrons and applicable instructions.

10      28.    The foregoing Midway Access obligations shall commence August 1, 2006

11  or the commencement of the California State Fair 2006.

12  **C.    CONCESSIONS (Ticket Booths, Games and Food)**

13      29.    The following obligations shall commence August 1, 2006 or the

14  commencement of the California State Fair 2006:

15      30.    All concessions trailers operated by RCS, or displaying an RCS logo, shall

16  have at least one counter that is mounted at a maximum height of 36 inches above the finished grade.

17  Use of folding shelves or portable tables mounted or situated immediately below one of the main

18  service windows for each concession trailer shall be sufficient compliance for purposes of this

19  paragraph.

20      31.    At least 10%[10] of the seating for portable dining and picnic tables supplied by

21  RCS at the State Fair shall be accessible, and to the maximum extent feasible, RCS shall provide at

22  least one table in each location where portable dining or picnic tables are provided on the MIDWAY.

23  "Accessible tables" shall have a minimum knee space of 27 inches that extends a minimum of thirty

24  inches wide and that projects a minimum of 19 inches back from the front face. Such tables shall

25  be connected to an accessible route.

26

27  ──────────

28  [10] **COURT**: The court understands that the 10% calculation identified here will be based
   on the total number of individual seats provided, rather than number of tables, without any rounding
   off. For example, if 120 seats (e.g., 24 tables of 5) are available, 12 seats will be accessible.

00395625.WPD                              15

32.     Prepare and maintain written materials and media materials which can be used in training current and future employees on the procedures and policies regarding Concessions. Said training shall be mandatory for all employees on a yearly basis with reviews and on-the-job training as necessary. Said training shall include operational guidelines; use of appropriate language, in the policies, procedures and signage at or near the Concessions; and the procedures for responding to special guest requests based upon the nature of the disability, including temporary movement of fencing, gates or other barriers normally required because of regulation or safety. A special section of the operating procedures for each applicable concession shall include the appropriate text shall be maintained on a yearly basis at a central location and available for inspection and training.

33.     RCS shall provide appropriate signage for applicable CONCESSIONS set forth below indicating their accessibility to disabled patrons and applicable instructions. Said signage shall incorporate the regulatory and manufacture[11] stipulations and any additional accessibility instructions or depictions shall not be inconsistent therewith. Said text may be incorporated into existing signage with similar graphics as are now used for signage consistency and company colors and logos.

1)     Fun Fotos

2)     Guest Relations

3)     Big Dogs

4)     Junior Hot Shots

5)     Race Time

6)     Racers Town

7)     Squeezer's Lemonade

8)     Sugar Babes

9)     Kiddie Shack

**D.     CONTRACTS WITH CONTRACTORS AND SUBCONTRACTOR**

34.     RCS will incorporate into all contracts with contractors and sub-contractors

---

[11] **COURT**: The court reads this word as "manufacturer."

00395625.WPD                                    16

1  that they comply with the Americans with Disabilities Act and the applicable RCS accessibility

2  obligations agreed to herein. The contractual language will include the following:

3
4  *Contractor shall utilize the premises in an orderly manner and in compliance with all present and future applicable Federal, State and local statutes, ordinances, rules and regulations, including the proper possession of any applicable licenses or permits. Contractor shall further comply with the provisions of the Americans with Disabilities Act including local and national accessibility requirements.*
5

6      The requirements under this provision shall first apply to the 2006 Carnival season

7  commencing February 1, 2006.

8  **E.      TICKET BOOTHS**

9      35.     RCS agrees to include an accessible ticket booth at the location of each ticket

10  booth cluster on the Midway.

11

12  **F.     OPTION TO CLOSE FACILITIES.**

13      36.     In lieu of making modification to any particular ride, facility or amenity

14  called for by this decree, the RCS may choose to sell or permanently close such facility or

15  amenity from public use.

16  **G.     ENFORCEMENT**

17      37.     Should any Plaintiff in the future become aware of any facts or conditions

18  relating to the RCS that may give rise to a claim that RCS has failed to comply with any of the

19  injunctive relief provisions set forth herein, such Plaintiff shall, prior to seeking enforcement from

20  this Court, provide notice to RCS at its current address as registered with the Arizona Secretary of

21  State and to Defendant's current counsel, Boyd Jensen, Esq., in writing, addressed to his then current

22  addresses as registered with the State Bar. Defendant shall have sixty (60) days, following receipt

23  of such notification to undertake to correct the alleged violation and/or respond to Plaintiffs'

24  allegations. Any response made by Defendant shall be in writing, addressed to Plaintiffs' counsel,

25  Tim Thimesch of the Thimesch Law Offices, at his then current address registered with the State

26  Bar. Plaintiffs' counsel agrees to contribute pro bono up to three hours in any given calendar year

27  toward these informal negotiation efforts. If such Plaintiff determines, in his or her own good faith

28  discretion, that the matter(s) are not resolved by Defendant's response, such Plaintiff shall be

00395625.WPD                                17

permitted to file a noticed motion under the current case number of this action seeking enforcement of this CONSENT DECREE. The prevailing party in such motion proceedings, whether in full or in part, may be entitled to an award of reasonable attorney fees, litigation expenses and costs for such motion, which motion proceedings shall be pursuant to the normal prevailing party standards that applied before the action's dismissal.

38.     The Parties have not reached an agreement regarding the statutory damages claims of the ISC plaintiffs (ISC, INC.; RUSS BOHLKE; CHRISTINE FITZGERALD; and CONNIE ARNOLD) or the claims of all Named Plaintiffs for attorney fees, litigation expenses and costs for this case, and reserve all such issues for trial or appropriate disposition. The Parties have recently settled the individual damage claims of plaintiffs LARRY MCIVER and HOLLYNN D'LIL, which settlement is contingent upon the execution of a standard release, the Court's approval of this Consent Decree, and payment of consideration.

## VII.    ATTORNEYS' FEES AND COSTS

39.     Upon Court Approval of this Consent Decree Defendant will pay plaintiffs' counsel's reasonably incurred interim statutory attorneys fees, litigation expenses and costs incurred in the McIver and two ISC Actions, if the Parties reach agreement on the total amount owed, within 60 days after Court Approval. Such fees shall be paid within 30 days of reaching an agreement.

40.     If the Parties do not reach agreement on the amount of reasonable interim attorney fees, litigation expenses and costs within 60 days after Court Approval, Plaintiffs' Counsel may thereafter file within 60 days a Motion to recover such fees, litigation expenses and costs (including any available enhancement) for determination by the Court. Any litigation expenses, including expert fees and costs, attorney fees and court costs may be awarded by the court pursuant to Christianberg Garment Co. v. EEOC, 434 U.S. 412 (1978) or other standard deemed applicable by the court.

41.     Notwithstanding any statement in this Decree regarding Defendants' dispute of the allegations and/or non-admission and denial of liability, the Parties agree that Named Plaintiffs have prevailing party standing to make a motion for reasonable fees, litigation expenses and costs. Ray Cammack reserves all rights to oppose such a motion.

42.    The determination shall be an order appealable directly to the Ninth Circuit Court of Appeals.

## VIII.   COURT APPROVAL OF CONSENT DECREE

Within thirty (30) days following Ray Cammack's approval of this Consent Decree, the Parties shall jointly move the Court for an Order granting its Approval. The Parties agree to seek such Approval from the Honorable Kimberly Mueller, Magistrate Judge, U.S. District Court for the Eastern District of California. Magistrate Judge Mueller has indicated her willingness to oversee the approval and enforcement process, and she possesses knowledge of this case's history and an understanding of the numerous technical and legal issues presented in this case.

## IX.   CONTINUING JURISDICTION

43.    The Court shall retain continuing jurisdiction to interpret and enforce the Consent Decree as provided herein and to determine fees, litigation expenses and costs, if necessary. The Court shall also retain jurisdiction to resolve Plaintiff's remaining claims for statutory and compensatory damages.[12] Each and all of the agreements of the Parties in this Consent Decree are contingent upon the Court granting leave for Plaintiffs to file a Third Amended Complaint as contemplated herein, and the Court's acceptance of aforesaid continuing jurisdiction.

## X.   MISCELLANEOUS

44.    **Counterparts.** This Consent Decree may be executed in counterparts, each of which will be considered an original, but all of which, when taken together, will constitute one and the same instrument. Facsimile signatures shall be considered valid as of the date thereof, although the original signature pages shall thereafter be appended to this Consent Decree and filed with the Court.

45.    **Interpretation .** The language of this Consent Decree will be construed as a whole according to its fair meaning, and not strictly for or against any of the Parties. The headings in this Consent Decree are solely for convenience and will not be considered in its interpretation.

---

[12] **COURT:** As of September 26, 2005, plaintiffs' damages claims have settled.

00395625.WPD                                    19

Where required by context, the plural includes the singular and the singular includes the plural. This Consent Decree is the product of negotiation and joint drafting so that any ambiguity will not be construed against any Party.

46.    **Severability**.   In the event any portion of this Consent Decree is deemed to be unenforceable, or is in conflict with applicable law, the remainder of this Consent Decree will be enforced and will remain in full force and effect.

47.    **Non-Determination.**   The Court has made no findings concerning alleged violations of any law, whether state or federal, local, regulation, order or rule at this time, and the Parties expressly reserve the right to litigate these matters if this Consent Decree does not receive Court Approval. The Parties agree that nothing in this Consent Decree may be interpreted as an admission by any Party of any fact, legal principle, or conclusion. If, for any reason, settlement is not effectuated, or Court Approval obtained, no evidence of this proposed Consent Decree shall be admissible for any purpose in the McIver Action, either of the ISC Actions, or other actions to be brought by Named Plaintiffs or Plaintiffs' Counsel.

48.    **Entire Agreement**.   This Consent Decree expresses and constitutes the sole and entire agreement between the Parties and supersedes all prior agreements, negotiations and discussions between the Parties and/or their respective counsel with respect to the subject matter of the McIver Action, the ISC Actions, and/or this Consent Decree. The Consent Decree supersedes any prior or contemporaneous oral or written agreements or understandings between and among the Parties and/or counsel for the Parties regarding the subject matter of the McIver Action, the ISC Actions, and/or this Consent Decree.

49.    **Additional Documents**.   To the extent any documents are required to be executed by any of the Parties to effectuate this Consent Decree, each Party hereto agrees to execute and deliver such and further documents as may be required to carry out the terms of this Consent Decree.

50.    **Ray Cammack's Approval**.   The signature herein below of RCS' Chief Executive Officer and President, Guy Leavitt, indicates that he has obtained prior approval of this document through RCS' Board of Directors.

00395625.WPD                          20

1    51.    **Authority .** Each Party represents to all other Parties that such Party has the
2  full power and authority to enter into this Consent Decree, that the execution and delivery thereof
3  will not violate any agreement to which such Party is a party or by which such Party is bound, and
4  that this Consent Decree, as executed and delivered, constitutes a valid and binding obligation of
5  such Party, enforceable in accordance with its terms. The signatories to this Consent Decree
6  expressly warrant that they have been authorized to execute this Consent Decree and to bind their
7  respective Parties to the terms and provisions herein.

8    52.    **Knowing Agreement .** Each Party to this Consent Decree acknowledges that
9  it has been represented by legal counsel, and that each Party has reviewed, and has had the benefit
10  of legal counsel's advice concerning, all of the terms and conditions of this Decree.

11    53.    **Successors.** This Consent Decree shall be binding upon and inure to the
12  benefit of the respective heirs, successors, assigns and representatives of the Parties. To the extent
13  permitted by law, the Parties intend that this Consent Decree and Order shall additionally be binding
14  upon all persons with disabilities similarly situated to the Named Plaintiffs in relation to injunctive
15  relief claims, and that the terms of this Consent Decree shall have the effect of res judicata and/or
16  collateral estoppel against injunctive relief claims. However, the Decree shall not preclude claims
17  for damages by persons with disabilities, including under tort or as provided by statute.[13]

18    54.    **Non-Application to Defendants State of California and California
19  Exposition & State Fair.** No part of this Consent Decree shall be construed to affect Named
20  Plaintiffs' ongoing legal claims, or any actions, against Defendants State of California and California
21  Exposition & State Fair, which shall remain in full force and effect, except as to the Title II
22  obligations of such defendants in relation to the rides, attractions and concessions specifically
23  operated by RCS, as specified herein.[14]
24

25    55.    **Appealability.** Unless otherwise stated, any order issued by the Court
26  pursuant to this Consent Decree shall be appealable to the Ninth Circuit Court of Appeals.

27  [13] **COURT**: See footnote 5 above.

28  [14] **COURT**: Concurrently with its qualified approval of this Consent Decree, the court is approving a Consent Decree as to the State of California and California Exposition & State Fair.
00395625.WPD                21

1    56.    **Deadlines.** Any deadlines imposed under this Decree shall be subject to the

2  extensions imposed by Fed. Rules of Civ. Pro., Rule 6.

3    57.    **Consent Order Binding on Parties and Successors in Interest.** The Parties

4  agree and represent that they have entered into this CONSENT DECREE voluntarily, under no

5  duress, and wholly upon their own judgment, belief, and knowledge as to all matters related to this

6  CONSENT DECREE, after having received full advice from counsel.

7    58.    This CONSENT DECREE and Order shall be binding on Plaintiffs LARRY

8  MCIVER and HOLLYNN D'LIL,[15] Defendant RAY CAMMACK SHOWS, INC.; and, any

9  successors in interest. RAY CAMMACK SHOWS, INC is one of several corporations or limited

10  liability companies working with RAY CAMMACK SHOWS, INC. These companies are referred

11  to together and individually as RAY CAMMACK SHOWS, INC. or Defendant(s). The Parties have

12  a duty to so notify all such successors in interest of the existence and terms of this CONSENT

13  DECREE and Order during the period of the Court's jurisdiction of this CONSENT DECREE. To

14  the extent permitted by law, the Parties intend that this CONSENT DECREE and Order shall

15  additionally be binding upon all persons with disabilities similarly situated to Named Plaintiffs, and

16  that the terms shall have the effect of *res judicata* and/or collateral estoppel.[16]

17    59.    **Joint Preparation And Severability**: This CONSENT DECREE and Order

18  is deemed jointly prepared by all Parties and shall not be strictly construed against any party as its

19  drafter. If any term of this CONSENT ORDER is determined by any court to be unenforceable, the

20  other terms of this CONSENT ORDER shall nonetheless remain in full force and effect.

21    60.    **Signatories Bind Parties.** Signatories on the behalf of the Parties represent

22  that they are authorized to bind the Parties to this CONSENT DECREE and Order. **Counterparts.**

23  This CONSENT DECREE may be executed in counterparts signatures, and such signatures may be

24  attached in counterparts, each of which shall be deemed an original, and which together shall

25

26

27    [15] **COURT**: The court assumes reference to the ISC Plaintiffs (ISC, Inc., Russ Bohlke, Christine Fitzgerald, Connie Arnold, and Jeffrey Evans) has been inadvertently omitted, and thus

28  reads this paragraph as incorporating said plaintiffs.

[16] **COURT**: See footnote 5 above.

00395625.WPD                              22

constitute one and the same instrument. Such counterparts may be signed as faxed signatures, which shall have the same force and effect as the original.

Dated: September 16, 2005

**Thimesch Law Offices**
TIMOTHY S. THIMESCH

Attorney for Plaintiffs

Dated: _____, 2005

Plaintiff HOLLYNN D'LIL

Dated: _____, 2005

Plaintiff LARRY MCIVER

Dated: _____, 2005

Plaintiff CONNIE ARNOLD

Dated: _____, 2005

Plaintiff RUSS BOHLKE

Dated: _____, 2005

Plaintiff CHRISTINE FITZGERALD

Dated: September 16, 2005

Plaintiff JEFFREY EVANS

Dated: _____, 2005

Plaintiff ISC, INC.
Authorized Representative
Print Officer's Name: _____
Officer's Title: _____

Dated: _____, 2005

BOYD JENSEN, ESQ.
BETTY FRACISCO, ESQ.
GARRETT & JENSEN

Attorneys for Defendant
RAY CAMMACK SHOWS, INC.

00395625.WPD

23

1   Dated: _____, 2005

2                                                Defendant RAY CAMMACK SHOWS, INC.
                                                 By Guy Leavitt, CEO and President of
3                                                RAY CAMMACK SHOWS, INC.[17]

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

LAW OFFICES OF
PORTER, SCOTT,
WEIBERG & DELEHANT
A PROFESSIONAL CORPORATION
350 UNIVERSITY AVE., SUITE 200
P.O. BOX 255428
SACRAMENTO, CA 95865
(916) 929-1481
www.pswdlaw.com

28

---

[17]   **COURT**:  The court acknowledges receipt of a copy of the proposed consent decree signed by all parties and counsel, and submitted to the court on September 21, 2005.

00395625.WPD                                            24