1    **Thimesch Law Offices**
     TIMOTHY S. THIMESCH, ESQ., No. 148213
2    MICHELLE L. THIMESCH, ESQ., No. 140591
     171 Front Street, Suite 102
     Danville, CA 94526-3321
3    Direct: 925/855-8235
     Fax: 925/855-8435

4    Attorneys for Plaintiffs
     LARRY MCIVER, HOLLYNN D'LIL, ISC, INC., RUSS BOHLKE, CHRISTINE FITZGERALD, CONNIE
5    ARNOLD, and JEFFREY EVANS

6    BOYD F. JENSEN, II, ESQ. (No. 91058)
     BETTY FRACISCO, ESQ. (No. 150658)
     GARRETT & JENSEN
7    433 Civic Center Drive West
     Santa Ana, CA 92702-2002
     Tel: 714/550-0100
8

   Attorneys for Defendant RAY CAMMACK SHOWS, INC.
9

10                        U.S. DISTRICT COURT
                EASTERN DISTRICT OF CALIFORNIA
11

12 | LARRY MCIVER and HOLLYNN D'LIL, | CASE NO. S-2:01-1967 KJM |
| --- | --- |
| Plaintiffs, | Civil Rights |

13 v.

14 THE CALIFORNIA EXPOSITION &       CONSENT DECREE WITH COURT
    FAIR, aka "Cal Expo"; STATE OF          ANNOTATIONS
15 CALIFORNIA; RAY CAMMACK SHOWS,
    INC.; and DOES 1-5000, Inclusive,

16 Defendants.

17 _____/

18 ISC, INC., RUSS BOHLKE, CHRISTINE       CASE NO. CIV-S-04-1790 KJM
    FITZGERALD, CONNIE ARNOLD, and     Civil Rights
19 JEFFREY EVANS,                        Related Action

             Plaintiffs,
20 v.

21 THE CALIFORNIA EXPOSITION &
    FAIR, aka "Cal Expo"; RAY CAMMACK
22 SHOWS, INC.; and DOES 1-50,000, Inclusive,

            Defendants.
23 _____/

24                1.      Plaintiffs LARRY MCIVER and HOLLYNN D'LIL filed the action

25 encaptioned McIver, et al v. Cal Expo & Fair et al Case No.: S-01-1967 KJM (Hereafter "McIver

26 Action") for themselves to enforce provisions of the Americans with Disabilities Act of 1990

27 ("ADA"), 42 U.S.C. §§ 12101 et seq., and California's Civil Rights laws, against defendants RAY

28 CAMMACK SHOWS, INC. ("Defendant(s)" and/or "RCS"). Similarly, the plaintiffs ISC, INC.;

1  RUSS BOHLKE; CHRISTINE FITZGERALD; CONNIE ARNOLD; and JEFFREY EVANS filed
2  two separate proposed class actions against RAY CAMMACK SHOWS, INC., filed two proposed
3  class actions encaptioned ISC, Inc et al v. Cal Expo & Fair et al, Case No: CIV-S-04-1790 EJG JFM
4  et al. (U.S. District Court, Eastern District of California-Sacramento) (Hereafter "ISC Federal
5  Action"), and ISC, Inc et al v. Cal Expo & Fair et al Case No: 03AS05963 (Superior Court of
6  California-Sacramento) (Hereafter, "ISC State Action"). The plaintiffs in the ISC actions likewise
7  sought to ensure enforcement of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.
8  §§ 12101 et seq. Hereafter, the Plaintiffs in the three actions, i.e., the McIver Action, the ISC
9  Federal Action and the ISC State Action, shall be referred to collectively and alternately as
10 "Plaintiffs" or "Named Plaintiffs."[1]

11      2.     Plaintiffs allege that Defendants violated Title III of the ADA, Section
12 302(b)(2) [42 USC 12182(b)(2)], and the corresponding "full and equal" access provisions of
13 California Civil Code Sections 51 and 54.1, et seq., by failing to comply with barrier removal
14 provisions to full and equal access to their privately owned rides, concessions and attractions
15 provided annually during the State Fair at Cal Expo in Sacramento, California.

16      3.     Defendant RAY CAMMACK SHOWS, INC. denies these allegations, and
17 by entering into this CONSENT ORDER, RCS does not admit liability to the allegations in
18 plaintiffs' Complaint filed in this action. The Parties hereby enter into this CONSENT ORDER for
19 the sole purpose of resolving this lawsuit without the need for protracted litigation.

20 **I.     JURISDICTION**

21      4.     The Parties agree that the Court has jurisdiction of this matter pursuant to
22 28 USC §1331 for alleged violations of the Americans with Disabilities Act of 1990, 42 USC 12101

23

24
25  [1] Plaintiff Michael Dunne was originally a named plaintiff in the McIver Action, and
26  Plaintiff Earl Welsh in the ISC Actions. Mr. Dunne was dismissed without prejudice by Order dated
    October 14, 2004. A similar Stipulation and Proposed Order is now pending in relation to Mr.
    Welsh.

27
28  **COURT**: The docket does not reflect the filing of a stipulation as to Mr. Welsh. The court's order
    approving this consent decree with clarifications and modifications dismisses Mr. Welsh as a party
    in this action.

1   *et seq.* and pursuant to pendant jurisdiction for alleged violations of California Civil Code Sections
2   54; 54.1; 54.3; and 55. The Parties additionally acknowledge that for each disability classification
3   covered by this decree, the Named Plaintiffs as a group have standing for Article III purposes to
4   pursue the injunctive relief claims resolved by this decree, and have so sufficiently demonstrated
5   with verifiable evidence of their disability, and their injury and future injury through sufficient
6   exposure and use of the park and its facilities covered hereunder. The Parties stipulate, however, that
7   the foregoing acknowledgment shall constitute privileged and confidential settlement matter that
8   shall not be admissible as evidence in any proceeding or trial concerning the damage claims of
9   Named Plaintiffs.   The Parties stipulate, however, that the foregoing acknowledgment shall
10  constitute privileged and confidential settlement matter that shall not be admissible as evidence in
11  any proceeding or trial concerning the damage claims of Named Plaintiffs.[2]

12  ## II.   RECITALS

13          5.      The current operative complaint is Plaintiffs' Second Amended Complaint,
14  filed June 2, 2002.  Plaintiffs will request permission to file a Third Amended Complaint in
15  conjunction with the submission of this Consent Decree to include the claims of certain named
16  plaintiffs in ISC v. Cal Expo, et al., Superior Court No. 03AS05963 (hereafter "ISC State Action")
17  and ISC v. Cal Expo, et al., U.S.D.C., E. Dist. of Calif., No. CIV-S-04-1790 KJM (Hereafter
18  "Federal ISC Action").  (Hereafter, the two ISC cases may be referred to as "The ISC Actions.")
19  McIver Plaintiffs D'Lil and McIver, and named ISC Plaintiffs Christine Fitzgerald, Connie Arnold,
20  Russ Bohlke, Jeffrey Evans and ISC, Inc. and Defendant Ray Cammack Shows, Inc., along with
21  Defendants Cal Expo and the State of California, who are both not parties to this Consent Decree,
22  have agreed to jointly stipulate to Plaintiffs' filing of a Third Amended Complaint.  The individual
23  Named Plaintiffs (excluding ISC, Inc.) are each persons with a Mobility Disability and/or Vision
24  Disability who regularly use the public facilities at Cal Expo.

27
28  [2] **COURT**: The court clarifies that while the parties apparently have agreed they will not
    seek to admit the information referenced here, determinations of admissibility shall be made by the
    court.

6.     The Parties joint stipulation provides that if the Court grants Plaintiffs leave to file a Third Amended Complaint that will incorporate the above-named ISC Plaintiffs and their claims, that the Federal and State ISC Actions will be dismissed, if and when the Court approves the Consent Decree as provided elsewhere herein. The Parties stipulation further provides, *inter alia,* that the ISC Plaintiffs factual allegations incorporated into the Third Amended Complaint shall relate back to the date of the original filings of the respective Federal and State ISC Actions, all Named Plaintiffs' claims for attorneys fees, litigation expenses and costs incurred in the State and Federal ISC actions shall be deemed incurred in the present McIver action, and for this purpose the three actions shall be deemed inextricably intertwined. The Parties agree that the factual allegations in the Third Amended Complaint shall relate back to the original filings in each of the respective individual actions. This stipulation is supported by standard principals relating to tolling agreements and waiver of defenses.[3]

7.     The Parties contemplate and understand that this Consent Decree fully resolves any and all injunctive relief issues relating to Mobility and Vision Disabilities.[4] The Parties agree that the Court has jurisdiction of this matter pursuant to 28 USC §1331 for alleged violations of the Americans with Disabilities Act of 1990, 42 USC 12101 *et seq.* and pursuant to pendant jurisdiction for alleged violations of California Civil Code Sections 54; 54.1; 54.3; and 55. For purposes of this consent decree, the Parties stipulate that each of plaintiffs have suffered and are suffering sufficient injury in fact to pursue this action on behalf of the general public interest, and

---

[3] **COURT**: The court adopts the parties' stipulation regarding the relation back of claims with the clarification that the stipulation will be enforced to the extent allowable by law, with the status of the law to be litigated at the time of any dispute based on the relation back doctrine.

[4] Plaintiffs' Experts, Barry Atwood and Karl Danz, prepared a 3 volume report identifying barriers to access on the midway, which shall provide helpful context as to this agreement. However, the signatory defendants are not required by this Decree to perform the work described in the Atwood/Danz Report. It is referred to here and defined below for the purpose of describing the scope contemplated by the negotiations and compromise reached in this matter.

00395625.WPD                                    4

1  have so demonstrated through sufficient evidence of exposure and use of the facilities and/or

2  deterrence.[5]

3  **III.   DEFINITIONS**

4         8.   As used in this Consent Decree, the following terms shall have the meaning

5  ascribed to them in this Section. Except to the extent expressly stated to the contrary, any term not

6  defined in this Section, or elsewhere in this Consent Decree, that has an expressly defined meaning

7  in either the ADA or the regulations promulgated pursuant thereto ("Regulations") shall have the

8  meaning ascribed to it by the ADA or the Regulations, in that order of preference.[6] All other terms

9  shall be interpreted according to their plain and ordinary meaning.

10      **A.   ADA**

11         "ADA" means and refers to the Americans with Disabilities Act as contained at 42

12  U.S.C. § 12101 et seq.

13      **B.   ADAAG**

14         "ADAAG" means and refers to the Americans with Disabilities Act Accessibility

15  Guidelines, codified at Appendix A to 28 Code of Federal Regulations, Part 36 and at Appendix A

16  to 49 Code of Federal Regulations, Part 37.

17      **C.   APPROVAL**

18         "Approved," "Approval" or "Court Approval" means and refers to the approval by

19  the Court in Case No. S-2:01-1967 KJM of the terms of this Consent Decree, the concurrent

20

21

22

23      [5] **COURT:** As the court previously has advised the parties, it does not believe this decree can be enforced to prevent parties not in privity with plaintiffs from bringing actions if such parties

24  otherwise have the right to do so. See Headwaters, Inc. v. U.S. Forest Service, 399 F.3d 1047, 1052-54 (9th Cir. 2005). The court notes plaintiffs have never sought class certification or demonstrated

25  to the court in a manner to support the court's independent determination that this consent decree is structured to protect "strangers" to this case. Id. at 1056. Thus, the court approves the decree's

26  incorporation of language referencing "similarly situated members of the public" only to the extent

27  allowable by law, with resolution of res judicata to be resolved by litigation in the future to the extent the question is raised by future filings.

28      [6] **COURT:** The parties have represented to the court that in the case of a conflict as to meaning, the ADA will control.

Stipulation for Leave to File the Third Amended Complaint, and the Court's consent to maintain jurisdiction to interpret and enforce the terms of this Consent Decree.

### D.    ATWOOD REPORT

"Atwood Report" means the 3 Volume Report prepared by Plaintiffs' Consultant, Barry Atwood, and served on Defendants as part of expert designations in this case. The report will be maintained by plaintiffs' counsel and made available upon request by any Party or person.

### E.    CALIFORNIA DISABILITY ACCESS LAWS

"California Disability Access Laws" refers to the Unruh Civil Rights Act, California Civil Code §§ 51 et. seq., California Civil Code §§ 54 et. seq., Government Code §§ 4450 and 1135 et. seq., Health and Safety Code §§ 19952 and 19955, as well as those portions of the California Building Code (Title 24 of the Code of Regulations) that set forth scoping requirements for structural access in new and altered facilities.

### F.    CONSENT DECREE

"Consent Decree" means and refers to this document, "Consent Decree and Order".

### G.    COMPLIANCE

"Compliance," "Compliant" and "Comply" mean and refer to substantial satisfaction of the dictates of this Consent Decree and the performance standards specified herein.

### H.    DEFENDANT

"Defendant" means and refers to the RAY CAMMACK SHOWS, INC.

### I.    DEFENSE COUNSEL

"Defense Counsel" refers to the law firm of Garrett & Jensen.

### J.    MOBILITY DISABILITY

"Mobility Disability" means and refers to any physical impairment or condition that substantially limits an individual's ability to move his or her body or a portion of his or her body and includes, but is not limited to, orthopedic and neuro-motor disabilities and any other impairment or condition that limits an individual's ability to walk, maneuver around objects, ascend or descend

1   steps or slopes, and operate controls. An individual with a Mobility Disability may use a wheelchair

2   or motorized scooter for mobility, or may be semi-ambulatory.

3   **K.**   **NAMED PLAINTIFFS**

4       "Named Plaintiffs" means and refers to Larry McIver and HolLynn D'Lil, Christine

5   Fitzgerald, Connie Arnold, Russ Bohlke, Jeffrey Evans and ISC, Inc.

6

7

8   **L.**   **PARTIES**

9       "Parties" means and refers to the California Exposition & State Fair, State of

10   California, HolLynn D'Lil and Larry McIver, Christine Fitzgerald, Connie Arnold, Russ Bohlke,

11   Jeffrey Evans and ISC, Inc.

12   **M.**   **PERFORMANCE STANDARDS**

13       "Performance standards" shall mean and refer to those standards described and further

14   defined in paragraph VI(D).

15   **N.**   **PLAINTIFFS' COUNSEL**

16       "Plaintiffs' Counsel" means and refers to Thimesch Law Offices.

17

18   **O.**   **RELEASED CLAIMS/RELEASED PARTIES**

19       "Released Claims" and "Released Parties" shall mean and refer to those claims and

20   Parties described and further defined in Section "V".

21   **P.**   **THE COURT**

22       "The Court" means and refers to the United States District Court for the Eastern

23   District of California and specifically Magistrate Judge Kimberly J. Mueller unless she becomes

24   unavailable, in which case another judge will be assigned to the case according to the Eastern

25   District's Local Rules.

26   **Q.**   **TITLE 24**

27

28

00395625.WPD        7

1  "Title 24" means and refers to the regulations set forth at Title 24 of the California

2  Code of Regulations, 2001 edition, or the current version in effect at time of planning and work,

3  provided no undue burden is created by subsequent changes in the code.

4  **R.   VISION DISABILITY**

5  "Vision Disability" means and refers to any impairment or condition that substantially

6  limits an individual's ability to see. A person with a Vision Disability may be blind, legally blind,

7  or may have poor or low vision, which is not correctable through conventional eye wear.

10 **IV.   PURPOSE AND BINDING EFFECT**

11  9.   The Parties desire to resolve their differences and disputes by settling the

12  declaratory and injunctive relief claims in the McIver lawsuit, as well as the declaratory and

13  injunctive relief claims of all ISC Plaintiffs, subject to amendment of the claims and consent of the

14  Parties, so as to:

15  10.   Resolve the claims for programmatic access brought by plaintiffs against

16  separate defendant California Exposition & State Fair to the Midway facilities at Cal Expo for

17  qualified individuals with disabilities, including Mobility and Vision Disabilities, as required under

18  federal and state law;[7]

19  11.   Provide a means for physical access to certain negotiated rides, attractions and

20  concessions as required under federal and state law for qualifying individuals with disabilities;

21  12.   Assure that no one, including the Named Plaintiffs, nor other persons similarly

22  situated, will attempt to enforce conflicting standards against the RCS's carnival operation at Cal

23  Expo regarding compliance with Title III of the ADA;[8]

24  13.   Assure that, pursuant to the holding of Headwaters, Inc. v. U.S. Forest Service

25  (2005) 399 F.3d 1047, 1052, no one found to be in privity and adequately represented by the Named

26  Plaintiffs in this action, including the Named Plaintiffs, nor other persons similarly situated, shall

27

28  [7] **COURT**: See footnote 5 above.

   [8] **COURT**: See footnote 5 above.

   00395625.WPD                 8

1   hereafter assert the same claims for injunctive relief (arising out of the same nucleus of fact

2   necessary to establish liability), which would require Defendants to make additional and/or different

3   modifications to RCS's carnival operation at Cal Expo or to follow different standards beyond what

4   is agreed to herein, in order to comply with the existing obligations under provisions of Titles II and

5   III of the ADA, Section 504, or California disability access laws;[9] and

6

7

8       14.     Avoid the uncertainties and costs of further and future litigation for all Parties.

9       15.     Furthermore, RCS' self-evaluations, guides and efforts, previously undertaken

10  pursuant to the Americans with Disabilities Act to ensure access to its programs, services, activities

11  and facilities, are hereby supplemented and amended by this Consent Decree.

12      16.     This Consent Decree shall be binding upon Plaintiffs, on behalf of themselves

13  and all their individual heirs, agents, assigns, attorneys, and all other successors-in-interest

14  (hereinafter jointly and collectively designated "PLAINTIFFS"), and RAY CAMMACK SHOWS,

15  INC., and all other ownership or successors in interest owners of RAY CAMMACK SHOWS, INC.,

16  and for its officers, directors, members, employees, franchisers, franchisees, licensees, attorneys,

17  agents, insurers, owners, purchasers, sharcholders, members, parent companies, subsidiaries and

18  affiliates and all of their respective predecessors, successors and assigns (hereinafter collectively

19  referred to as "Defendants" and/or "RCS")).

20      17.     The Parties agree to entry of this Order in order to resolve the below listed

21  allegations raised in the Second Complaint filed with this Court on June 7, 2002, the First Amended

22  Complaint filed in the ISC Federal Action filed on April 14, 2004, and the original complaint filed

23  in the ISC State Action on August 27, 2004.  Accordingly, and subject to the Court's Approval of

24  consolidation and the filing of a Third Amended Complaint, the Parties agree to the entry of this

25  CONSENT DECREE without trial or further adjudication of any issues of fact or law concerning

26  the issues specified herein, and without prejudice to plaintiffs' reservation of remaining damage

27  claims and for attorney fees, litigation expenses and costs.

28

---

[9] **COURT**:  See footnote 5 above.

00395625.WPD                                    9

1    WHEREFORE, the Parties hereby agree and stipulate to the Court's entry of this
2    CONSENT ORDER, which provides as follows:

3    ## V.    RESOLUTION OF INJUNCTIVE RELIEF

4    18.    Except as specified in paragraph 38, below, this CONSENT DECREE shall
5    be a full, complete, and final disposition and settlement of the claims for injunctive relief that have
6    been or could have been alleged in the Complaint. The Parties agree that there has been no admission
7    or finding of liability or violation of the ADA and/or California civil rights laws, and this CONSENT
8    ORDER should not be construed as such. The Court shall retain jurisdiction of this action to enforce
9    and interpret this CONSENT DECREE. The Parties agree that if they or any of them seek Court
10   enforcement of this CONSENT DECREE and Order, any such enforcement will be by noticed
11   motion, application or other appropriate request for an order for specific performance and that a
12   contempt citation or decree will not be sought by any party.

13   19.    With respect to the injunctive relief claims resolved by this Order, the Parties
14   acknowledge that they waive the provisions of and any benefits that may be conferred by Civil Code
15   section 1542 which reads:

16   **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE**
17   **CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER**
18   **FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF**
19   **KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS**
20   **OR HER SETTLEMENT WITH THE DEBTOR.**

21   The provisions of this paragraph shall not affect the reserved issues specified in paragraph 38,
22   below.

23   ## VI.    INJUNCTIVE RELIEF

24   20.    The defendants agree to perform the following work to provide disabled
25   access:

26
27
28

00395625.WPD                        10

1

## A. RIDES AND ATTRACTIONS:

21. **Time for Compliance.** Unless other time periods are specifically set forth below, it is hereby agreed between the Parties hereto that the Rides and Attractions identified below will be made "accessible" in accordance with their accompanying provisions. Said obligations shall commence August 1, 2006 or the commencement of the California State Fair 2006. In the case of the Bumble Bee ride, the modifications shall be completed by August 1, 2008 or the commencement of the 2008 California State Fair.

22. **Ramps.** RCS will modify 5 rides to provide disabled access via a ramp to the respective loading platform. The 5 rides RCS designates are:

1) Bumble Bee

2) La Grande Wheel

3) Silver Streak

4) Sound Wave

5) Zipper

RCS may employ generic portable ramps that shall conform to the specifications provided for "ramps" under Title 24 and ADAAG regulations. The ramps shall be extended to the ride platform or to a point where the patron may touch a single ride vehicle. RCS shall develop a written policy and enforced practice of not using the aforementioned ramps (and any access ramps added to other rides in the future) for queuing customers. RCS shall further include within their training materials and corporate policies the requirement to utilize ramps for other rides where feasible, and exercise good faith in implementing and enforcing this provision.

23. **Further Ride Modifications.**

a) RAY CAMMACK agrees that the following list of rides shall be made further "accessible" in accordance with subparagraphs (b), (c) and (d), below:

1) Bad Lands Express

2) Bear Affair

3) Berry Go Round

4) Big Eli Wheel

00395625.WPD                                11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5)   Bumble Bee

6)   Carousel

7)   Chaos

8)   Dragon Wagon

9)   Free Fall

10)   Ghost Pirates

11)   Hi Miler

12)   Kamikaze

13)   Kite Flyer

14)   La Grande Wheel

15)   Lolly Swings

16)   Orbiter

17)   Rockin' Tug

18)   Silver Streak

19)   Sky Ride

20)   Sound Wave

21)   Spidermania

22)   Toon Town

23)   Tornado

24)   Twist

25)   Wave Runner

26)   Yo Yo

27)   Zipper

b)   For all rides and attractions owned by RCS with fenced enclosures, including, but not limited to, any ride or attraction with a fenced enclosure that is identified above in subparagraph 23(a) and below and at paragraphs 22 and 25, the gated entries shall be modified where necessary to strictly comply with Title 24 and ADAAG to provide a minimum clear opening of 32 inches. This shall be accomplished within 3 years of the date of this Order. As new rides are

1  purchased, 32 inch entry widths shall be specified, and where old entry gates are replaced, the new

2  entry gates shall have 32 inch minimum clear openings. Thresholds at the modified, purchased and

3  replaced entrances shall not exceed 1/2 inch *beveled* per increment of rise.

4            c)      For all rides and attractions owned by RCS, including, but not limited

5  to, any ride or attraction with a fenced enclosure that is identified above in subparagraph 23(a) and

6  below and at paragraphs 22 and 25, RCS shall prepare and maintain written materials and media

7  materials which can be used in training all current and future employees on the procedures and

8  policies regarding accessibility to Rides and Attractions. Said training shall be mandatory for all

9  employees on a yearly basis with reviews and on-the-job training as necessary. Said training shall

10  include operational guidelines; use of appropriate language, in the policies, procedures and signage

11  at or near Rides and Attractions; and the procedures for responding to special guest requests based

12  upon the nature of the disability, including temporary movement of fencing, gates or other barriers

13  normally required because of regulation or safety. A special section of the operating procedures for

14  each applicable attraction shall include the appropriate text and shall be maintained on a yearly basis

15  at a central location and available for inspection and training.

16            d)      RCS shall provide appropriate signage for each of the applicable Rides

17  and Attractions indicating their accessibility to disabled patrons and applicable instructions.

18            e)      RCS shall, on a yearly basis, prepare a written brochure which contains

19  a general description of all its rides and attractions, with explanations of their accessibility and

20  whether special procedures such as "Accessible Through Exit" as opposed to a regular queue line

21  apply. Said brochures shall be available at ticket booths and the Guest Relations Station. Accessible

22  midway routes will be explained in situations where the existence of cables or terrain would

23  otherwise prevent access to the midway.

24        24.      The Parties agree that there are extraordinary situations depending on last

25  minute changes, for example ride replacements, extreme weather conditions or ride modifications

26  which could affect the ability of RCS to comply with these agreements respecting the Rides and

27  Attractions. It is agreed that RCS may deviate from compliance with these standards if upon the

28  exercise of good faith and reasonableness unanticipated changes, modifications or the weather make

00395625.WPD             13

1   compliance impractical or impossible.  Such deviations shall be temporary and in no circumstance
2   exist longer than one season.

3        25.      It is agreed that Rides and Attractions where loading platforms exceed 60
4   inches in vertical rise above the adjacent grade or where the attractions would require a fundamental
5   alteration in the nature of the activity to provide access are not subject to accommodation through
6   a ramp or other vertical means of access.  Current examples of such rides are set forth below:

7        1)    Big Eli
8        2)    Clown Glass House
9        3)    Cuckoo House
10       4)    Dragon Wagon
11       5)    EuroSlide
12       6)    Experience
13       7)    Free Fall
14       8)    Fun Train
15       9)    Ghost Pirates
16       10)   Goliath Slide
17       11)   Hi Miler
18       12)   HydroSlide
19       13)   Inverter
20       14)   Kamikaze
21       15)   Li'l Raiders
22       16)   Mardi Gras
23       17)   Moscow Circus
24       18)   StarShip 2000
25       19)   Survival Island
26       20)   Tilt-a-Whirl

27   **B.**    **MIDWAY ACCESS**

28        26.    RCS shall prepare and maintain written materials and media materials which

00395625.WPD                    14

1    can be used in training current and future employees on the procedures and policies regarding

2    Midway Access. Said training shall be mandatory for all employees on a yearly basis with reviews

3    and on-the-job training as necessary. Said training shall include operational guidelines; use of

4    appropriate language, in the policies, procedures and signage at or near the Midway; and the

5    procedures for responding to special guest requests based upon the nature of the disability, including

6    temporary movement of fencing, gates or other barriers normally required because of regulation or

7    safety.

8         27.    RCS shall provide appropriate signage for Main Midway Access Points

9    indicating routes, their accessibility to disabled patrons and applicable instructions.

10         28.    The foregoing Midway Access obligations shall commence August 1, 2006

11    or the commencement of the California State Fair 2006.

12        **C.**    **CONCESSIONS (Ticket Booths, Games and Food)**

13         29.    The following obligations shall commence August 1, 2006 or the

14    commencement of the California State Fair 2006:

15         30.    All concessions trailers operated by RCS, or displaying an RCS logo, shall

16    have at least one counter that is mounted at a maximum height of 36 inches above the finished grade.

17    Use of folding shelves or portable tables mounted or situated immediately below one of the main

18    service windows for each concession trailer shall be sufficient compliance for purposes of this

19    paragraph.

20         31.    At least 10%[10] of the seating for portable dining and picnic tables supplied by

21    RCS at the State Fair shall be accessible, and to the maximum extent feasible, RCS shall provide at

22    least one table in each location where portable dining or picnic tables are provided on the MIDWAY.

23    "Accessible tables" shall have a minimum knee space of 27 inches that extends a minimum of thirty

24    inches wide and that projects a minimum of 19 inches back from the front face. Such tables shall

25    be connected to an accessible route.

26

27 ──────────

28       [10] **COURT**: The court understands that the 10% calculation identified here will be based
on the total number of individual seats provided, rather than number of tables, without any rounding
off. For example, if 120 seats (e.g., 24 tables of 5) are available, 12 seats will be accessible.

1    32.   Prepare and maintain written materials and media materials which can be used
2  in training current and future employees on the procedures and policies regarding Concessions. Said
3  training shall be mandatory for all employees on a yearly basis with reviews and on-the-job training
4  as necessary. Said training shall include operational guidelines; use of appropriate language, in the
5  policies, procedures and signage at or near the Concessions; and the procedures for responding to
6  special guest requests based upon the nature of the disability, including temporary movement of
7  fencing, gates or other barriers normally required because of regulation or safety. A special section
8  of the operating procedures for each applicable concession shall include the appropriate text shall
9  be maintained on a yearly basis at a central location and available for inspection and training.

10    33.   RCS shall provide appropriate signage for applicable CONCESSIONS set
11  forth below indicating their accessibility to disabled patrons and applicable instructions. Said signage
12  shall incorporate the regulatory and manufacture[11] stipulations and any additional accessibility
13  instructions or depictions shall not be inconsistent therewith. Said text may be incorporated into
14  existing signage with similar graphics as are now used for signage consistency and company colors
15  and logos.

16
17              1)   Fun Fotos
                2)   Guest Relations
18
                3)   Big Dogs
19
                4)   Junior Hot Shots
20
                5)   Race Time
21
                6)   Racers Town
22
                7)   Squeezer's Lemonade
23
                8)   Sugar Babes
24
                9)   Kiddie Shack
25
     **D.   CONTRACTS WITH CONTRACTORS AND SUBCONTRACTOR**
26
              34.   RCS will incorporate into all contracts with contractors and sub-contractors
27
28
     _____
     [11] **COURT**: The court reads this word as "manufacturer."
     00395625.WPD                        16

1  that they comply with the <u>Americans with Disabilities Act</u> and the applicable RCS accessibility

2  obligations agreed to herein. The contractual language will include the following:

3  *Contractor shall utilize the premises in an orderly manner and in compliance with all present and future applicable Federal, State and local statutes, ordinances, rules and regulations, including the proper possession of any applicable licenses or permits. Contractor shall further comply with the provisions of the <u>Americans with Disabilities Act</u> including local and national accessibility requirements.*

4

5

6  The requirements under this provision shall first apply to the 2006 Carnival season

7  commencing February 1, 2006.

8  **E.     TICKET BOOTHS**

9  35.     RCS agrees to include an accessible ticket booth at the location of each ticket

10  booth cluster on the Midway.

11

12  **F.     OPTION TO CLOSE FACILITIES.**

13  36.     In lieu of making modification to any particular ride, facility or amenity

14  called for by this decree, the RCS may choose to sell or permanently close such facility or

15  amenity from public use.

16  **G.     ENFORCEMENT**

17  37.     Should any Plaintiff in the future become aware of any facts or conditions

18  relating to the RCS that may give rise to a claim that RCS has failed to comply with any of the

19  injunctive relief provisions set forth herein, such Plaintiff shall, prior to seeking enforcement from

20  this Court, provide notice to RCS at its current address as registered with the Arizona Secretary of

21  State and to Defendant's current counsel, Boyd Jensen, Esq., in writing, addressed to his then current

22  addresses as registered with the State Bar. Defendant shall have sixty (60) days, following receipt

23  of such notification to undertake to correct the alleged violation and/or respond to Plaintiffs'

24  allegations. Any response made by Defendant shall be in writing, addressed to Plaintiffs' counsel,

25  Tim Thimesch of the Thimesch Law Offices, at his then current address registered with the State

26  Bar. Plaintiffs' counsel agrees to contribute pro bono up to three hours in any given calendar year

27  toward these informal negotiation efforts. If such Plaintiff determines, in his or her own good faith

28  discretion, that the matter(s) are not resolved by Defendant's response, such Plaintiff shall be

00395625.WPD                                17

1  permitted to file a noticed motion under the current case number of this action seeking enforcement
2  of this CONSENT DECREE. The prevailing party in such motion proceedings, whether in full or
3  in part, may be entitled to an award of reasonable attorney fees, litigation expenses and costs for such
4  motion, which motion proceedings shall be pursuant to the normal prevailing party standards that
5  applied before the action's dismissal.

6      38.     The Parties have not reached an agreement regarding the statutory damages
7  claims of the ISC plaintiffs (ISC, INC.; RUSS BOHLKE; CHRISTINE FITZGERALD; and
8  CONNIE ARNOLD) or the claims of all Named Plaintiffs for attorney fees, litigation expenses and
9  costs for this case, and reserve all such issues for trial or appropriate disposition. The Parties have
10  recently settled the individual damage claims of plaintiffs LARRY MCIVER and HOLLYNN D'LIL,
11  which settlement is contingent upon the execution of a standard release, the Court's approval of this
12  Consent Decree, and payment of consideration.

13  **VII.   ATTORNEYS' FEES AND COSTS**

14
15      39.     Upon Court Approval of this Consent Decree Defendant will pay plaintiffs'
16  counsel's reasonably incurred interim statutory attorneys fees, litigation expenses and costs incurred
17  in the McIver and two ISC Actions, if the Parties reach agreement on the total amount owed, within
18  60 days after Court Approval.  Such fees shall be paid within 30 days of reaching an agreement.

19      40.     If the Parties do not reach agreement on the amount of reasonable interim
20  attorney fees, litigation expenses and costs within 60 days after Court Approval, Plaintiffs' Counsel
21  may thereafter file within 60 days a Motion to recover such fees, litigation expenses and costs
22  (including any available enhancement) for determination by the Court.  Any litigation expenses,
23  including expert fees and costs, attorney fees and court costs may be awarded by the court pursuant
24  to Christianberg Garment Co. v. EEOC, 434 U.S. 412 (1978) or other standard deemed applicable
25  by the court.

26      41.     Notwithstanding any statement in this Decree regarding Defendants' dispute
27  of the allegations and/or non-admission and denial of liability, the Parties agree that Named Plaintiffs
28  have prevailing party standing to make a motion for reasonable fees, litigation expenses and costs.
    Ray Cammack reserves all rights to oppose such a motion.

00395625.WPD                                    18

42. The determination shall be an order appealable directly to the Ninth Circuit Court of Appeals.

## VIII. COURT APPROVAL OF CONSENT DECREE

Within thirty (30) days following Ray Cammack's approval of this Consent Decree, the Parties shall jointly move the Court for an Order granting its Approval. The Parties agree to seek such Approval from the Honorable Kimberly Mueller, Magistrate Judge, U.S. District Court for the Eastern District of California. Magistrate Judge Mueller has indicated her willingness to oversee the approval and enforcement process, and she possesses knowledge of this case's history and an understanding of the numerous technical and legal issues presented in this case.

## IX. CONTINUING JURISDICTION

43. The Court shall retain continuing jurisdiction to interpret and enforce the Consent Decree as provided herein and to determine fees, litigation expenses and costs, if necessary. The Court shall also retain jurisdiction to resolve Plaintiff's remaining claims for statutory and compensatory damages.[12] Each and all of the agreements of the Parties in this Consent Decree are contingent upon the Court granting leave for Plaintiffs to file a Third Amended Complaint as contemplated herein, and the Court's acceptance of aforesaid continuing jurisdiction.

## X. MISCELLANEOUS

44. **Counterparts.** This Consent Decree may be executed in counterparts, each of which will be considered an original, but all of which, when taken together, will constitute one and the same instrument. Facsimile signatures shall be considered valid as of the date thereof, although the original signature pages shall thereafter be appended to this Consent Decree and filed with the Court.

45. **Interpretation.** The language of this Consent Decree will be construed as a whole according to its fair meaning, and not strictly for or against any of the Parties. The headings in this Consent Decree are solely for convenience and will not be considered in its interpretation.

---

[12] **COURT:** As of September 26, 2005, plaintiffs' damages claims have settled.

00395625.WPD          19

1   Where required by context, the plural includes the singular and the singular includes the plural. This

2   Consent Decree is the product of negotiation and joint drafting so that any ambiguity will not be

3   construed against any Party.

4        46.    **Severability.**   In the event any portion of this Consent Decree is deemed to

5   be unenforceable, or is in conflict with applicable law, the remainder of this Consent Decree will be

6   enforced and will remain in full force and effect.

7        47.    **Non-Determination.**  The Court has made no findings concerning alleged

8   violations of any law, whether state or federal, local, regulation, order or rule at this time, and the

9   Parties expressly reserve the right to litigate these matters if this Consent Decree does not receive

10  Court Approval.  The Parties agree that nothing in this Consent Decree may be interpreted as an

11  admission by any Party of any fact, legal principle, or conclusion.  If, for any reason, settlement is

12  not effectuated, or Court Approval obtained, no evidence of this proposed Consent Decree shall be

13  admissible for any purpose in the McIver Action, either of the ISC Actions, or other actions to be

14  brought by Named Plaintiffs or Plaintiffs' Counsel.

15       48.    **Entire Agreement.**   This Consent Decree expresses and constitutes the sole

16  and entire agreement between the Parties and supersedes all prior agreements, negotiations and

17  discussions between the Parties and/or their respective counsel with respect to the subject matter of

18  the McIver Action, the ISC Actions, and/or this Consent Decree.  The Consent Decree supersedes

19  any prior or contemporaneous oral or written agreements or understandings between and among the

20  Parties and/or counsel for the Parties regarding the subject matter of the McIver Action, the ISC

21  Actions, and/or this Consent Decree.

22       49.    **Additional Documents.**   To the extent any documents are required to be

23  executed by any of the Parties to effectuate this Consent Decree, each Party hereto agrees to execute

24  and deliver such and further documents as may be required to carry out the terms of this Consent

25  Decree.

26       50.    **Ray Cammack's Approval.**   The signature herein below of RCS' Chief

27  Executive Officer and President, Guy Leavitt, indicates that he has obtained prior approval of this

28  document through RCS' Board of Directors.

00395625.WPD                              20

51. **Authority .** Each Party represents to all other Parties that such Party has the full power and authority to enter into this Consent Decree, that the execution and delivery thereof will not violate any agreement to which such Party is a party or by which such Party is bound, and that this Consent Decree, as executed and delivered, constitutes a valid and binding obligation of such Party, enforceable in accordance with its terms. The signatories to this Consent Decree expressly warrant that they have been authorized to execute this Consent Decree and to bind their respective Parties to the terms and provisions herein.

52. **Knowing Agreement .** Each Party to this Consent Decree acknowledges that it has been represented by legal counsel, and that each Party has reviewed, and has had the benefit of legal counsel's advice concerning, all of the terms and conditions of this Decree.

53. **Successors.** This Consent Decree shall be binding upon and inure to the benefit of the respective heirs, successors, assigns and representatives of the Parties. To the extent permitted by law, the Parties intend that this Consent Decree and Order shall additionally be binding upon all persons with disabilities similarly situated to the Named Plaintiffs in relation to injunctive relief claims, and that the terms of this Consent Decree shall have the effect of res judicata and/or collateral estoppel against injunctive relief claims. However, the Decree shall not preclude claims for damages by persons with disabilities, including under tort or as provided by statute.[13]

54. **Non-Application to Defendants State of California and California Exposition & State Fair.** No part of this Consent Decree shall be construed to affect Named Plaintiffs' ongoing legal claims, or any actions, against Defendants State of California and California Exposition & State Fair, which shall remain in full force and effect, except as to the Title II obligations of such defendants in relation to the rides, attractions and concessions specifically operated by RCS, as specified herein.[14]

55. **Appealability.** Unless otherwise stated, any order issued by the Court pursuant to this Consent Decree shall be appealable to the Ninth Circuit Court of Appeals.

---

[13] **COURT**: See footnote 5 above.

[14] **COURT**: Concurrently with its qualified approval of this Consent Decree, the court is approving a Consent Decree as to the State of California and California Exposition & State Fair.

00395625.WPD                                                                 21

1    56.    **Deadlines.** Any deadlines imposed under this Decree shall be subject to the

2    extensions imposed by Fed. Rules of Civ. Pro., Rule 6.

3    57.    **Consent Order Binding on Parties and Successors in Interest.** The Parties

4    agree and represent that they have entered into this CONSENT DECREE voluntarily, under no

5    duress, and wholly upon their own judgment, belief, and knowledge as to all matters related to this

6    CONSENT DECREE, after having received full advice from counsel.

7    58.    This CONSENT DECREE and Order shall be binding on Plaintiffs LARRY

8    MCIVER and HOLLYNN D'LIL,[15] Defendant RAY CAMMACK SHOWS, INC.; and, any

9    successors in interest. RAY CAMMACK SHOWS, INC is one of several corporations or limited

10   liability companies working with RAY CAMMACK SHOWS, INC. These companies are referred

11   to together and individually as RAY CAMMACK SHOWS, INC. or Defendant(s). The Parties have

12   a duty to so notify all such successors in interest of the existence and terms of this CONSENT

13   DECREE and Order during the period of the Court's jurisdiction of this CONSENT DECREE. To

14   the extent permitted by law, the Parties intend that this CONSENT DECREE and Order shall

15   additionally be binding upon all persons with disabilities similarly situated to Named Plaintiffs, and

16   that the terms shall have the effect of *res judicata* and/or collateral estoppel.[16]

17   59.    **Joint Preparation And Severability**: This CONSENT DECREE and Order

18   is deemed jointly prepared by all Parties and shall not be strictly construed against any party as its

19   drafter. If any term of this CONSENT ORDER is determined by any court to be unenforceable, the

20   other terms of this CONSENT ORDER shall nonetheless remain in full force and effect.

21   60.    **Signatories Bind Parties.** Signatories on the behalf of the Parties represent

22   that they are authorized to bind the Parties to this CONSENT DECREE and Order. **Counterparts.**

23   This CONSENT DECREE may be executed in counterparts signatures, and such signatures may be

24   attached in counterparts, each of which shall be deemed an original, and which together shall

25

26   ————————————

27   [15] **COURT**: The court assumes reference to the ISC Plaintiffs (ISC, Inc., Russ Bohlke, Christine Fitzgerald, Connie Arnold, and Jeffrey Evans) has been inadvertently omitted, and thus

28   reads this paragraph as incorporating said plaintiffs.

[16] **COURT**: See footnote 5 above.

00395625.WPD                22

1  constitute one and the same instrument. Such counterparts may be signed as faxed signatures, which

2  shall have the same force and effect as the original.

3

4  Dated: September 16, 2005                    **Thimesch Law Offices**
                                                TIMOTHY S. THIMESCH
5

6

7  _____                                  Attorney for Plaintiffs

8

9  Dated: _____, 2005
                                                _____
10                                              Plaintiff HOLLYNN D'LIL

11  Dated: _____, 2005
                                                _____
12                                              Plaintiff LARRY MCIVER

13  Dated: _____, 2005
                                                _____
14                                              Plaintiff CONNIE ARNOLD

15  Dated: _____, 2005
                                                _____
16                                              Plaintiff RUSS BOHLKE

17  Dated: _____, 2005
                                                _____
18                                              Plaintiff CHRISTINE FITZGERALD

19  Dated: September 16, 2005

20
                                                Plaintiff JEFFREY EVANS
21

22  Dated: _____, 2005
                                                _____
23                                              Plaintiff ISC, INC.
                                                Authorized Representative
24                                              Print Officer's Name: _____
                                                Officer's Title: _____

25  Dated: _____, 2005                  BOYD JENSEN, ESQ.
                                                BETTY FRACISCO, ESQ.
26                                              GARRETT & JENSEN

27

28                                              _____
                                                Attorneys for Defendant
                                                RAY CAMMACK SHOWS, INC.

00395625.WPD                                    23

1    Dated: _____, 2005

                                      Defendant RAY CAMMACK SHOWS, INC.
2                                     By Guy Leavitt, CEO and President of
                                      RAY CAMMACK SHOWS, INC.[17]
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

LAW OFFICES OF
PORTER, SCOTT,          28
WEIBERG & DELEHANT
A PROFESSIONAL CORPORATION
350 UNIVERSITY AVE., SUITE 200
P.O. BOX 255428
SACRAMENTO, CA 95865
(916) 929-1481
www.pswdlaw.com

---

[17] **COURT**: The court acknowledges receipt of a copy of the proposed consent decree signed by all parties and counsel, and submitted to the court on September 21, 2005.

00395625.WPD                                      24